MAY v. STATE NATIONAL BANK.

Opinion delivered Nov. 17, 1894.

1. *Federal court—Order of removal—Conclusiveness.*

An order of a Federal circuit court remanding a cause to the State court in which it originated, under act of Congress of March 3, 1887, cannot be questioned in the latter court on the ground that it was erroneously made.

2. *Fraudulent conveyance—Subsequent creditors.*

Under Mansf. Dig., sec. 3374, providing that every conveyance, etc., "made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void," a voluntary conveyance made with the *actual* intent to hinder, delay or defraud either prior or subsequent creditors is invalid as to either class of creditors.

3. *Case stated.*

A debtor, while embarrassed, made voluntary conveyances to relatives of a portion of his property, thereby leaving himself practically insolvent. At this time he was engaged in extensive enterprises of a speculative nature. After the conveyances were made he continued to treat the property as his own, placing expensive improvements upon it. Upon his failure, two years later, subsequent creditors attacked the conveyances as fraudulent. *Held*, that there was an actual intent to defraud, and that the conveyances were void as to subsequent creditors.

Appeal from Jefferson Circuit Court in Chancery.

JOHN M. ELLIOTT, Judge.

STATEMENT BY THE COURT.

This action was brought in the Jefferson circuit court by the appellees, the State National Bank and other creditors of C. M. Neel, to set aside two conveyances made by said Neel—one made on the 26th day of November, 1884, conveying to his nephew, C. M. Neel, Jr., a plantation in Jefferson county known as the "Lake Dick Place"; the other made on the 1st day of October,

1885, conveying to his sister, Mrs. A. P. Burks, his plantation in said county known as the "Astor Point Place." It was alleged that both of said deeds were without consideration, and made by said C. M. Neel in contemplation of insolvency, and with the intention to cheat, hinder and delay his creditors, both prior and subsequent. C. M. Neel became insolvent, and failed about the 15th of November, 1886. The debts of the creditors who joined in this suit were created subsequent to the conveyances in question, with the exception of the debt due Wiley Jones that was in existence at the time the two conveyances were made. Before bringing this suit, each of the creditors had brought actions at law in the same court against Neel, and had levied writs of attachments on the lands in controversy. The attachments were sustained, and judgments rendered for the amounts claimed by them respectively. After the writs of the plaintiffs had been levied, A. H. May, the appellant, who was also a creditor of C. M. Neel, brought suit against him and had a writ of attachment levied on the land in controversy, or a portion thereof. He afterwards removed the case to the United States court, recovered a judgment, and obtained a decree ordering land sold to pay his debts, and at said sale became the purchaser. He was made a party defendant with Neel in this action, and plaintiffs prayed that he be decreed to hold the land subject to their liens, and if their debts be not paid, that the land be sold.

May answered, denying that the conveyances were fraudulent as to plaintiffs, and denying that he held the land subject to their liens. On petition of May this case was also removed to the United States circuit court. Afterwards that court held that the removal was improper, and remanded the cause to the Jefferson circuit

court.    It was then heard, and a decree rendered in favor of the plaintiffs, from which May appealed to this court.

*U. M. Rose* and *G. B. Rose* for appellant.

1.   The court below had no jurisdiction, because the case was properly transferred to the United States circuit court, and should not have been remanded.    It is true that the amount in controversy was understated in the petition for removal; but that was unimportant, since the true amount was shown by the record.    16 Pet. 97; Dillon on Removals, sec. 70; Foster, Fed. Pr. sec. 385.    The amount in controversy is usually stated in the petition for removal; but, as it is not required by the statute, such a statement is merely surplusage.    The petition in this case was filed on the 6th day of July, 1888, and hence the proceeding is governed by the act of congress of March 3, 1875.    1 Supp. Rev. St. U. S. p. 613, sec. 3.    The petition seems to have been copied from the form prepared by Mr. Foster, whose work on Federal Practice stands deservedly high.    Foster, Fed. Pr. 644.    See also 42 Fed. 694.    The cause having been improperly remanded, the subsequent proceedings in the State court were void.    103 U. S. 493; 102 *id.* 136; 100 *id.* 316; 104 *id.* 14; 31 Fed. 505.    The final decision remains with the Federal courts, whose jurisdiction may be invoked, in cases of this kind, by writ of error.    19 Wall. 223; 118 U. S. 109.    But no appeal would lie from the order of the Federal court remanding the cause.    24 Stat. at Large, 553.

2.   The evidence fails to show that, at the date of the deeds, Neel was insolvent.    The case must be tried on its own merits, without regard to the former suit by Richardson & May, in so far as the charges of fraud are concerned.    52 Ark. 171.

3.   It does not appear that the conveyances were voluntary, but if they were, they were not fraudulent as

to subsequent creditors unless Neel, at the time of their execution, had in contemplation the contracting of the debts to plaintiffs, and there is no evidence of this. 56 Ark. 73; *Ib.* 256; Wait, Fr. Conv. sec. 106; 10 U. S. App. 665; 8 So. 366; 13 Pac. 536.

4. The filing of the complaint to set aside the conveyances by Neel established a lien in favor of Richardson & May. 38 Ark. 18. Having failed to make themselves party to that suit, their subsequent attachments pending the suit cannot now wrest from May the fruits of his litigation. Bump, Fr. Conv. p. 571; 93 Ill. 402; 4 Wall. 672.

5. None of the plaintiffs have proved that Neel was indebted to them, except Jones. Judgments are only evidence as between parties and privies, and there is no privity between plaintiffs, or Neel, and May, so far as these judgments go. 33 Ala. 469; 36 Minn. 223; 10 U. S. App. 665. As none have shown any debt against Neel, their suit necessarily fails. 52 Ark. 171.

*J. M. & J. G. Taylor, Crawford & Hudson, Dan W. Jones,* and *W. S. McCain* for appellees.

1. The cause was properly remanded to the State court. The petition should have stated "exceeded $2000," instead of $500. Act Congress March 3, 1887; 57 Fed. 913. The petition fails to show that appellant was a non-resident. Acts 1888, p. 435, sec. 2. The act of the Federal judge is conclusive. *Ib.*

2. The judgments are *prima facie* evidence of indebtedness. Wait, Fr. Conv. sec. 84, note 2, and sec. 270; 2 Freeman, Judg. 418; Bump. Fr. Conv. p. 557; 2 Black, Judg. sec. 605; 31 Ark. 546; 10 U. S. App. 665.

3. The deeds were clearly fraudulent. The whole thing was a sham (45 Ark. 520), even against subsequent creditors. 56 Ark. 75; 42 *id.* 42; Mansf. Dig. sec. 3374; 38 Ark. 427; 118 Mass. 527; 19 Pick. 231;

7 Allen, 146 ; 12 *id.* 606 ; 100 Mass. 126 ; 20 Wall. 36.

4. The bill filed by Richardson & May was not a creditor's bill, but a bill to foreclose a mortgage. When a debtor has made a fraudulent conveyance, it is still subject to attachment and execution. Mansf. Dig. sec. 3001; 42 Ark. 308 ; 55 Ark. 122. If the deeds were fraudulent, then the attachments constituted valid liens, and were not displaced by the subsequent filing of a creditor's bill. 110 U. S. 710 ; 14 How. 52; Wait, Fr Conv. secs. 73, 81.

5. The appellees followed the suggestion in 33 Ark. 338. See *Ib.* 769; Wait, Fr. Conv. secs. 58–60.

*N. T. White* for Wiley Jones and *M. A. Austin* and *J. W. House* for State National Bank and Mississippi Mills.

1. The cause was properly remanded to the State court. The order was final, from which there was no appeal, and the jurisdiction was re-vested in the State court. 131 U. S. 240 ; 41 Fed. 609 : *Ib.* 450 ; 28 *id.* 769; 33 *id.* 692 ; 37 *id.* 279 ; 138 U. S. 694 ; 104 *id.* 407 ; 123 *id.* 56 ; *Ib.* 286 ; *Ib.* 679 ; 137 *id.* 141 ; *Ib.* 451 ; 37 Fed. 821 ; 112 U. S. 190 ; 132 U. S. 267 ; 52 Miss. 457 ; 63 Cal. 608.

2. In order to set aside a conveyance for fraud, it is not necessary to establish a specific design to hinder or delay any particular creditor who assails the transfer. A fraudulent intent as to any one creditor will render the transfer fraudulent as to all. Bump, Fr. Conv. p. 28; 37 Ark. 560; 39 Am. Dec. 250; Mansf. Dig. sec. 3374. Where a conveyance is set aside for fraud, all creditors share in the result. 13 Cal. 71; 66 N. Y. 381 ; 12 Serg. & R. 454.

3. The conveyances were voluntary, and Neel was insolvent. Besides this, he was about to engage in a hazardous business, and by these conveyances placed his

property beyond the reach of creditors. Hence the conveyances are fraudulent as to subsequent creditors. 1 McCarter, N. J. 106; Pom. Eq. Jur. sec. 973; 69 Pa. St. 29; 44 Pa. St. 416; 42 Mo. 301; 34 N. J. Eq. 160; 39 N. Y. 169; 69 Mo. 631; 12 Serg. & R. 454; 13 How. 92; 1 Bond, C. C. 175; 14 Ark. 69; 30 Ala. 400; 49 N. H. 106; 34 N. Y. 508. The conveyances were merely colorable, and Neel never intended to part with the real title and ownership. 86 Ill. 229; 11 Paige, Ch. 594; Wait, Fr. Conv. sec. 89, p. 144.

4. The attachments of plaintiffs were levied before the attachment of Richardson & May, and their liens are prior and paramount. 32 N. W. 802; 19 N. Y. 369; 19 Fed. 589; 69 Am. Dec. 551; Drake on Att. (6 ed.) sec. 239; 15 Ark. 343; 19 *id.* 85; 46 *id.* 49; 39 *id.* 100; Mansf. Dig. sec. 325; 26 Am. Dec. 467; 35 *id.* 206.

RIDDICK, J., (after stating the facts). It is first contended that this case had been properly removed to the United States circuit court, that said court erred in remanding it, that therefore the circuit court of Jefferson county had no jurisdiction of the case, and that its decree is void. We need not stop to consider this point, for we are of the opinion that, under the act of congress of March 3, 1887, which controls this question, the order of the United States circuit court in remanding the case was an order from which no appeal or writ of error will lie, and that the jurisdiction of the State court cannot now be questioned. In re *Pennsylvania Co.*, 137 U. S. 451.

*1. Conclusiveness of order of removal from federal court.*

It is next contended that the evidence does not show that, at the time the conveyances in question were executed, Neel contemplated contracting the debts to plaintiffs, and that, even if the court should find that said conveyances were voluntary, they would not be fraudulent as to plaintiffs, for they are all, except Jones, subsequent creditors. The chancellor found that the con-

*2. When conveyances fraudulent as to subsequent creditors.*

veyances in question were made without consideration, and, after considering the evidence, we have arrived at the same conclusion. On the question of what circumstances are sufficient to give a subsequent creditor the right to have a prior voluntary conveyance by his debtor declared void, there is much difference of opinion between the courts of the several States. Our own decisions are not entirely harmonious on this question. In the case of *Toney* v. *McGehee,* 38 Ark. 427, it was said by Justice Harrison, who delivered the opinion, that "a voluntary conveyance may be impeached by a subsequent creditor, on the ground that it was made in fraud of existing creditors; but to do so he must show either that actual fraud was intended, or that there were debts still outstanding which the grantor owed at the time he made it." Afterwards, in *Cunningham* v. *Williams*, 42 Ark. 173, it was held, Mr. Justice Smith delivering the opinion of the court, that a subsequent creditor, to impeach a conveyance made by his debtor before the creation of his debt, must show that such conveyance was "made with an intent to put the property out of the reach of debts which he intended thereafter to contract, and which he did not intend to pay, or had reasonable grounds to believe he would not be able to pay." This case seems to conflict with the case of *Toney* v. *McGehee*, *supra*, but no reference is made to that case by the court in its opinion.

The same question came again before the court in the case of *Driggs & Co.'s Bank* v. *Norwood*, 50 Ark. 47, and the opinion of the court was again delivered by Judge Smith. In this case the conflict between the decisions in the two cases above mentioned was noticed, and Judge Smith, after stating the rule that, to avoid a prior voluntary conveyance on the part of his debtor, the subsequent creditor must show actual or intentional fraud, puts this question: "But is it necessary in every

such attack to show a specific intent to defraud future creditors? Or may the transfer be avoided at the suit of a subsequent creditor, on proof that it was a fraud upon the rights of previous creditors?" He then states. the ruling of the court in both *Toney* v. *McGehee* and *Cunningham* v. *Williams*, and, without determining the question propounded, he proceeds to dispose of the case before him by saying that under either rule the transfer in question was fraudulent. In the still later case of *Rudy* v. *Austin*, 56 Ark. 81, it was said by Mr. Justice Battle that, as "against subsequent creditors, a voluntary conveyance executed by a grantor in debt at the time is. not void unless actually fraudulent. To make it fraudulent proof of actual or intentional fraud is required." The same rule was announced by the court in the case of *Crampton* v. *Schaap*, 56 Ark. 256. In neither of these two last mentioned cases does the court determine the question asked by Judge Smith in *Driggs & Co.'s Bank* v. *Norwood*, to-wit: "Is it necessary for the subsequent creditor to show an intent to defraud future creditors, on the part of the debtor making the conveyance, or is it sufficient to show that there was an actual intent to defraud existing creditors?" In this connection counsel for appellees have called attention to our statute in reference to fraudulent conveyances. The section referred to (3274 of Mansfield's Digest) is as follows: "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods. and chattels, or things in action, * * * * made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors. and purchasers prior and subsequent, shall be void."

In the statute of 13th Elizabeth, and in the statutes of most of the States on the same subject, subsequent creditors are not expressly referred to. But it will be no-

ticed that our statute expressly includes them within its provisions by saying that all such conveyances, "as against creditors and purchasers prior and subsequent, shall be void."

The rule that, in order for a subsequent creditor to impeach a voluntary conveyance by a debtor prior to the creation of his debt, he must show an actual intent to defraud has been repeated and followed so often by this court that it has become to a certain extent a rule of property which should not be overturned. But, considering these decisions in connection with the statute, we hold that a voluntary conveyance made with an actual intent to cheat, hinder or defraud either existing or subsequent creditors is void as to creditors both prior and subsequent.

A conclusion quite as favorable to subsequent creditors, if not more so than this, has been reached by many of the courts, even when the statute does not expressly include the subsequent creditor within its terms.

In *Day* v. *Cooley*, 118 Mass. 527, Morton, J., delivering the opinion of the court, said: "It is well settled that if a debtor makes a conveyance with the purpose of defrauding either existing or future creditors, it may be impeached by either class of creditors." Citing *Parkman* v. *Welch*, 19 Pick. 231; *Thacher* v. *Phinney*, 7 Allen, 146; *Winchester* v. *Charter*, 12 Allen, 606; *Wadsworth* v. *Williams*, 100 Mass. 126. In the old case of *Reade* v. *Livingston*, 3 Johns. Ch. 481, Chancellor Kent, following the rule as laid down by the English courts, came to a conclusion on this question very similar to that now followed by the courts of Massachusetts, and Mr. Bigelow, in his work on Fraud, after making an historical examination of the cases upon this question, concludes that the weight of authority in this country is on the side of the English rule substantially as expressed by Chancellor Kent. 2 Bigelow on Fraud, 105; *Belford* v.

*Crane,* 16 N. J. Eq. 265; S. C. 84 Am. Dec. 156 and note; *Bassett* v. *McKenna,* 52 Conn. 437; *Wyman* v. *Brown,* 50 Me. 139; *Lowry* v. *Fisher,* 2 Bush, 70; S. C. 92 Am. Dec. 475; *King* v. *Wilcox,* 11 Paige, Ch. 589; *Dewey* v. *Moyer,* 72 N. Y. 70; *McLane* v. *Johnson,* 43 Vt. 48; *Claflin* v. *Mess,* 30 N. J. Eq. 211; *Kirksey* v. *Snedecor,* 60 Ala. 198; *Lawson* v. *Alabama Warehouse Co.* 73 Ala. 293; *Williams* v. *Avery,* 38 Ala. 118; *Hutchison* v. *Kelly,* 1 Rob. (Va.) 130; 1 Am. L.Cas. 44; *Hagerman* v. *Buchanan,* 45 N. J. Eq. 292. The cases on this question, which are numerous and conflicting, are collated in a note to the above case of *Hagerman* v. *Buchanan,* in 14 Am. St. Rep. 732. We do not undertake to decide what rule the weight of authority on this question supports, for the peculiar language of our own statute controls us.

The case of *Cunningham* v. *Williams,* 42 Ark. *supra,* holding that the subsequent creditor must show that the debtor made the conveyance with the intent to put the property out of reach of debts which he intended thereafter to contract, seems at variance with our conclusion in this case, but there is nothing in the report of that case to show that the debtor whose conveyance was attacked owed any debts at the time he made the conveyance in question. If he made the conveyance while free from debt, then the rule announced by Judge Smith would be correct as applied to the facts of that case, for where one owing no one makes a voluntary conveyance of his property, then the subsequent creditor, in order to set it aside, must show that the conveyance was made in contemplation of future debts, and with a view to put his property beyond the reach of future creditors, for there would be no possibility of showing an intent to defraud an existing creditor if none existed. The rule was rather too broadly stated in that case, and seems to conflict with our own statute.

This section of our statute, while different from that of most of the States on the same subject, is very similar to a section in the statute of Missouri. In a recent case before the Supreme Court of that State, Mr. Justice Sherwood, who delivered the opinion of the court, after quoting the statute, said: "It will be observed that the statute makes no distinction between the two classes of creditors, and that it is unlike 13 Elizabeth, chapter 5, in that it specifically mentions subsequent creditors, something which the English statute does not do." Under our statute, he adds, "subsequent creditors are as much within its protection as prior creditors." *Snyder* v. *Free*, 114 Mo. 367.

While it is now settled by the repeated decisions of this court that actual fraud must be shown to avoid a voluntary conveyance in favor of a subsequent creditor, yet by this is meant only that, as to the subsequent creditor, an intention to defraud must be proved, while, as to the existing creditor under the same circumstances, it may be presumed, even though the transaction be entirely honest. Thus in *Belford* v. *Crane*, 84 Am. Dec. 156, in a case where a husband, engaged in business and involved in debt, made a voluntary settlement on his wife, it was said that, as against existing creditors, "it was fraudulent, no matter how pure the motive which induced it;" and in same opinion it was said "that as to subsequent creditors there is no such necessary legal presumption, and there must be proof of fraud in fact." This intention to defraud may be shown by the circumstances surrounding the transaction, as any other fact may be proved. Direct proof of fraud is seldom forthcoming, and not required. The court will take into consideration the condition and relation of the parties to such conveyances, whether the debtor was, at the time of such conveyance, solvent or in an embarrassed and failing financial condition, the

amount of the property transferred as compared with the remainder of his estate, and other circumstances in proof, in order to arrive at the intention of the debtor in making the conveyance. The court will also consider the length of time elapsing between the date of the conveyance and the creation of the debt to the subsequent creditor, for, while it is true that a voluntary conveyance made with an intention to defraud creditors is void as to creditors both prior and subsequent, yet it does not follow that such a transfer may be set aside by any subsequent creditor, however remote the creation of his debt may be from the execution of the conveyance. Even the existing creditor may be refused relief if he delay too long before bringing suit, for, as was said by Chancellor Rose in the case of *Cunningham* v. *Brumback*, 23 Ark. 338, the law wisely holds that "it is better that ancient wrongs should go unredressed than that ancient strife should be renewed." So the courts will properly refuse to interfere with such conveyances in behalf of subsequent creditors when they are not merely colorable, and have been long acquiesced in; or when the length of time elapsing between the conveyance and the creation of the debt, taken in connection with other circumstances in proof, is sufficient to raise a belief that the plaintiff was not injured or defrauded by the conveyance. Each case must depend upon its own surrounding circumstances.

Looking at the circumstances surrounding the conveyances complained of in this case, we find that Neel, while heavily in debt and in embarrassed financial condition, owing over three hundred thousand dollars, with assets not greatly exceeding that amount, made voluntary conveyances to his nephew and his sister of land embracing a valuable portion of his estate. Deducting the property thus conveyed, he was left practically in-

3. Case stated.

solvent. After the conveyances were made, he still used the property as his own, placing expensive and valuable improvements upon it. At the time these conveyances were made he was engaged in large business enterprises, running a bank, building and operating a railroad, buying and selling and cultivating many farms and doing this immense business mostly on a credit basis, compelled each year to borrow large sums of money. He continued in this business with debts steadily increasing down to the time of his failure, which occurred in November, 1886, less than two years after these conveyances were made. While it may be possible that Neel's intentions were honest, yet the evidence points the other way, and with these circumstances in proof we think the chancellor was right in finding that there was an intention to defraud, and that the conveyances were void as to both prior and subsequent creditors.

There were other points raised, but we find it unnecessary to discuss them.

Bunn, C. J., did not participate in the decision of this cause.