SEMMES *v.* UNDERWOOD.

Opinion delivered November 6, 1897.

FRAUDULENT CONVEYANCE—SUBSEQUENT CREDITORS.—It is error to instruct the jury that a mortgage is not void as a fraud upon a subsequent creditor unless it was made with the intent "to put the mortgaged property beyond the debts he intended to contract and did not intend to pay," since it would be void as to subsequent creditors if made with intent to defraud either prior or subsequent creditors. (Following *May* v. *State National Bank*, 59 Ark. 614.) (Page 419.)

FRAUD—DIVERSION OF MORTGAGED CHATTELS.—Though a mortgage was not given with intent to defraud creditors, yet if the mortgagor subsequently diverts and misappropriates money collected by him under the mortgage that should have been applied to the payment of debts secured by the mortgage, this constitutes a fraud as to creditors. (Page 419.)

Appeal from Jackson Circuit Court.

RICHARD H. POWELL, Judge.

STATEMENT BY THE COURT.

On 1st of October, 1894, the appellants brought suit against the appellee, before a justice of the peace, for $170, and sued out a writ of attachment, which was levied upon four barrels of whiskey, the property of the appellee. The ground of

the attachment, as set out in the affidavit for the order, was that the appellee had sold, conveyed, or otherwise disposed of his property with the fraudulent intent to cheat, hinder, or delay his creditors. Appellee filed an affidavit traversing the ground of the attachment, and took a change of venue. The justice of the peace dissolved the attachment, and the plaintiffs appealed to the circuit court, where judgment was rendered for the debt, upon failure of the defendant to answer the complaint; and, upon trial of the attachment by a jury, the issue was found for the defendant, and the attachment was dissolved. The plaintiffs excepted, tendered their bill of exceptions, and appealed to this court; their motion for a new trial having been overruled.

The evidence tended to show that the appellee was a saloon keeper, and that he was considerably in debt; that he gave a mortgage or deed in trust to the Jackson County Bank, upon some lots and his stock of liquors, bar fixtures, etc., to secure the payment of several notes he owed the bank; that the trust deed bears date 9th January, 1894; that, by its provisions, the appellee was permitted to remain in possession of the stock of liquors, etc,, and continue to carry on business, and sell in the ordinary way for cash, and was required to pay the proceeds at the close of every day into the bank, retaining enough to cover legitimate expenses of the business, such as rent of building, bar tenders' hire, and his living expenses, the amount of sales after deducting such expenses to be applied to the payment of the indebtedness secured by the deed in trust, which consisted of two notes for $175 each, due in fifteen and thirty days, and three notes for $350 each, due respectively in ninety days, six months and nine months after date. He was to continue thus until default, and his expenses were limited to the least practical sum, considering the successful management of the property conveyed. This trust deed was paid off and satisfied, and satisfaction indorsed on the record of it on 5th day of November, 1894, by the trustee. On the 19th of September, 1894, the appellee made a chattel mortgage, in favor of Martin & Ruffner, conveying the stock of liquors, bar fixtures, etc., to secure the payment to them of about $950 altogether, which he owed them for services, the same to mature

1st January, 1895. It was stipulated in said mortgage that Ruffner was to have possession of the property conveyed, and that he might sell the same at private sale, and in quantities to suit purchasers, and apply the proceeds as payment on said indebtedness, but that in no case should said property be sold at less than the cost price thereof, when delivered to said Underwood, at his said dram shop. This mortgage was also paid off by bill of sale of the fixtures to Martin &. Ruffner. The evidence tends to show that, after deducting for expenses, the proceeds of the sales of the liquors, cigars, etc., during the life of the first mortgage, were paid into the Jackson County Savings Bank to the credit of Underwood, and were drawn out upon his checks. It is fair to presume that this was not misappropriated, as he paid the debts secured by the trust deed, and was obliged to draw out some to meet legitimate expenses. There is no evidence that these mortgages were fraudulent, so far as the creditors secured by them were concerned. They were not fraudulent upon their face.

It appears from the evidence that the appellee on one occasion held back, and did not pay into the bank, as provided, the sum of $400 and over, which he diverted and appropriated to payment on a mortgage upon his home.

The court, at the request of the defendant, and against the objection of the plaintiff, gave the following instruction to the jury:

"No. 3. Before the jury can find as fraudulent the mortgage by defendant previous to the debt sued on in this cause, they must first find from the evidence that the mortgage was made with the intent of defendant to put the mortgaged property beyond the debts he intended to contract, and did not intend to pay, or that defendant then had reasonable grounds to believe he would not be able to pay."

And the court, of its own motion, gave to the jury, over the objection of the plaintiff, the following instructions:

"No. 9. The jury are instructed that if they find from the evidence that Ruffner took possession of the goods conveyed in said mortgage, except the fixtures embraced in said mortgage from Underwood to Martin & Ruffner, and proceeded to sell the same under said mortgage, and permitted said Underwood to

take the money arising from said sale from time to time, and appropriated the same for other purposes than that of the payment of the debt secured by the mortgage, this would be a circumstance to which they should look in determining the intent in the execution of said mortgage; and if they believe from all the evidence in the case that the intent of the defendant at the time of the executing said mortgage was to delay any creditor in the collection of his debt, they will be authorized to find for plaintiff."

"No. 10. The jury are instructed that if they believe from all the testimony in the case that the mortgage of Underwood to Martin & Ruffner was executed by the defendant for the purpose of covering up his property and hindering or delaying any creditor of his in the collection of his debt, they will be authorized to find for plaintiff, and sustain the attachment, and, in determining this fact, they should look to the conduct of the defendant, Underwood, at the time and after the execution of the mortgage, and of the parties secured thereby (Martin and Ruffner), their possession, if taken before default, and the disposition, if any, they made of the property before default; and if, upon all the evidence in the case, they believe that the mortgage was executed for the purpose of shielding defendant's property, they will be authorized to sustain the attachment herein."

To the giving of each of said instructions the appellant excepted at the time.

*S. M. Bains*, for appellants.

The mortgage to Martin & Ruffner was fraudulent. The sale of perishable personal property, leaving the vendor in possession with full power to sell and use proceeds, is fraudulent. 45 Ark. 129; 75 Ala. 122; 8 So. 337. Appellee was to remain in control of his business, but not as agent for the mortgagee; hence the mortgage is fraudulent. 45 Ark. 123; 39 Ark. 325; 31 Ark. 666; 55 Ark. 77. The trust deed to Hurley and the Jackson County Bank was likewise fraudulent. 59 Ark. 622; Code, § 3572. The court erred in refusing to give the instructions asked for by the plaintiff, and numbered 1, 2, 3, 4, 5, 6, 7, 8 and 8½. The court erred in giving instructions ten and

nine. The second instruction asked by defendant and given by the court is abstract and misleading. It was error to give the third instruction given. Sand. & H. Dig., § 3472; 59 Ark. 614.

HUGHES, J., (after stating the facts.) The third instruction is contrary to an express provision of Sandels & Hill's Digest, which, in section 3472, provides: "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or things in action, or any rents issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers, prior and subsequent, shall be void." *May* v. *State National Bank,* 59 Ark. 614. This statute is plain and unambiguous, and there is no room for comment.

Instruction nine is erroneous in that it told the jury that if they found "from the evidence that Ruffner took possession of the goods conveyed in the mortgage, and sold the same, and permitted said Underwood to take the money arising from the sale of same from time to time, and appropriate the same for other purposes than that of the payment of the debt secured by the mortgage, this would be a circumstance which they should look to in determining the intent in the execution of said mortgage; and if they believe, from all the evidence in the case, that the intent of the defendant at the time of the executing said mortgage was to delay any creditor in the collection of his debt, they will be authorized to find for the plaintiff." The latter part of the tenth instruction is obnoxious to the same objection as the latter part of the ninth, and is erroneous.

While the facts referred to, if proved, might not in all cases amount to fraud, yet we think that, under the facts in this case, if the appellee diverted and misappropriated money collected by him under either mortgage that should have been applied to the payment of debts secured by these mortgages, this was fraud as to creditors. It matters not whether the intent of the appellee at the time of the execution of the mort-

gage was to hinder his creditor in the collection of their debts, if he so demeaned himself by the misappropriation of the proceeds of the sales under the provisions of the mortgage as to hinder and delay his creditors, he was guilty of fraud.

The latter part of the ninth instruction is obnoxious to the objection that it would seem to exempt the defendant from liability to the charge of fraudulently conveying his property for the purpose of hindering or delaying his creditors, provided only he did not have such intention at the time of the execution of the mortgage, though he might afterwards have used the mortgage as a cover for the fraudulent disposition and misappropriation of his property.

For the errors in giving the third instruction and ninth instruction, the judgment is reversed, and the cause is remanded for a new trial.