WHITE SEWING MACHINE COMPANY *v.* WOOSTER.

Opinion delivered April 22, 1899.

1.  HOMESTEAD—ESTATE OF CURTESY.—The possessory interest of a tenant by the curtesy, consummate, is sufficient to support a claim of homestead.    (Page 385.)

2.  SAME—CONVEYANCE.—A surviving husband, having a right of homestead in an estate by the curtesy, may convey such estate to his children without interference by his creditors.    (Page 385.)

3.  CLOUD ON TITLE—EXECUTION SALE—HOMESTEAD—A sale of a homestead under execution by the creditors of the homesteader creates a

cloud upon the title of the latter, and of his assigns, which equity will remove.   (Page 385.)

4.   HOMESTEAD—WHEN NOT LOST.—A husband who, as head of the family, has acquired a right of homestead in his wife's land during her lifetime, and has continued to occupy it as such, does not lose his right to claim it as exempt by reason of the disintegration of the family on the death of the wife and the separation or coming of age of the children. (Page 386.)

5.   SAME—ABANDONMENT—LEASE.—A lease of the homestead for a short term will not constitute an abandonment.   (Page 386.)

Appeal from Franklin Chancery Court.

THOMAS B. MARTIN, Chancellor.

*John G. B. Simms*, for appellant.

A husband has no right of homestead in the lands of his wife.   Const. (1874), art. 9, §§ 3–6.   No homestead is allowed to a person after ceasing to be the head of a family.   Freeman, Ex. § 240.   Occupancy is essential to the claim.   29 Ark. 401; 31 *ib*. 466; 42 *ib*. 175; 51 *ib*. 87.   A *home* is necessary to a homestead exemption.   Freeman, Ex. § 241.   A mere aggregation of individuals is not a *family*.   42 Ark. 539.

*Sam Frauenthal*, for appellees.

A tenant by curtesy can claim homestead.   Thomps. Hom. & Ex. § 174; 79 Ill. 456; 54 Ark. 9; 56 Ark. 621.   The husband did not cease to be the head of the family because of the death of his wife and the coming of age of his children.   43 Ark. 439; 48 Ark. 540.   There was no abandonment of the homestead.   56 Ark. 621.   Homestead laws are liberally construed.   38 Ark. 112.   The requirement as to occupancy is less strict as to estates acquired by inheritance than by purchase. Waples, Hom. & Ex. 204–5; 78 Ky. 398.

BUNN, C. J.   This is a bill in the Faulkner chancery court by the appellees against the appellant company to remove a cloud upon plaintiff's title to lots Nos. 11, 12, 23 and 24 in block 26 of Robinson's plan of the town of Conway, Faulkner county, Arkansas.   Decree for plaintiffs, and the defendant appealed to this court.

Narcissa Wooster departed this life on the 25th of October, 1896, leaving surviving her her husband, J. P. Wooster, Sr., and her and his children, J. P. Wooster, Jr., aged 27 or 28 years; Mrs. Mary Ellen Gellenwater, aged 25 years; and Mrs.

Annie L. Tate, aged 22 years,—and seized of the lots above named. For many years she had been afflicted with rheumamatism, and had, in company with her husband, made three several visits to Hot Springs in this state, seeking relief from the waters of that place, making a considerable stay on each visit, the first of which was before they settled upon the lots in controversy and occupied them and the buildings thereon as their homestead, which was in 1888. On the last visit, it became apparent that their stay would be indefinitely prolonged, and they leased their homestead to one Hardin for one year, beginning the 7th of August, 1896, and expiring the 7th of August, 1897. From their entrance upon the premises, the wife and husband continued to claim the same as their homestead, neither of them having any other homestead, and never were absent from the same, except as stated, and therefore never abandoned the same, nor did any act amounting to an abandonment. The wife, the owner of the fee in the homestead, died in October, 1896, and their said children were all then of age, and said lease had not then expired; and the husband and father, then the tenant by the curtesy and otherwise entitled to the possession, was thus prevented from resuming the possession, and was in fact still further delayed in taking possession by the extreme illness of the lessee, Hardin, after the expiration of the lease.

Soon after the death of Mrs. Wooster, the defendant company, having previously obtained a judgment against J. P. Wooster, Sr., caused execution to be issued and levied upon his life estate in the land in controversy, and on the 2d of January 1897, the same was sold thereunder to the defendant company, and the sheriff gave to it his certificate of sale and purchase, and this certificate constitutes the alleged cloud upon plaintiff's title.

The plaintiffs are the owners of the fee by inheritance from their mother, the said Narcissa, and two of them of the possessory right of their father by purchase from him as evidenced by deed dated December, 1896, about two months after the death of the mother, but after the levy of the execution of defendant, as stated above. The consideration of the deed from the father to the two children, as testified by him, was $400,

which he owed them, the amount stated in the deed, and the further consideration that he was to be permitted to share the use and occupation of the home with them.

The father and husband sought in every proper way to assert his homestead claim against the execution of defendant, but all his efforts to obtain a supersedeas against it were of no avail, and he seems to have given up the contest in despair.

The husband, during the life time of his wife, had but an inchoate right in the property, subject to be defeated by the survival of the wife, and to become consummate, in case of her death before his.   He had, however, independent of this, a joint homestead right with his wife (she assenting, as appears to have been the case), growing out of his marital relations with her, as against the rest of the world.   *Orr* v. *Shraft*, 22 Mich. 260; *Buck* v. *Lee*, 36 Ark. 525.

After her death, he, being the tenant by the curtesy, owned a life estate in the property, and had possession through his tenant, Hardin, and was entitled to claim his interest as exempt from execution as his homestead, since almost any possessory interest will support a homestead claim.   *Rockafellow* v. *Peay*, 40 Ark. 69; *Sims* v. *Thompson*, 39 Ark. 301; *Ward* v. *Mayfield*, 41 Ark. 94; *Robson* v. *Hough*, 56 Ark. 621; *Thompson* v. *King*, 54 Ark. 9.   It is held in *Thompson* v. *King, supra,* that the tenancy by the curtesy must yield to the right of homestead in the minor children, but in this case, where the life tenancy attached on the death of the wife, there were no minor children to claim in opposition to the tenant by the curtesy.

The husband continued, in every proper way, to assert his homestead right from the time he and his wife and family began to occupy it as such in·1888, jointly with her until her death, and afterwards until sold to his children, and even after that, doubtless to preserve his reservation testified to by him.   If this property constituted his homestead from the beginning, he being then a citizen of the state, a married man and the head of a family, and he continued to assert his claim to it as a homestead on all proper occasions and in every proper way, as he appears to have done, and had never abandoned it, as appears to be the case, until the sale to his children as aforesaid, he had

a right to claim it as exempt from the payment of his debts, and therefore to convey to his children, without let or hinderance from his creditors. In such case, moreover, there was nothing left in him upon which the execution could be levied, and the sale carried nothing with it. But the sale under the execution was in so far voidable only as to create a cloud upon the title of plaintiff.

In *Stanley* v. *Snyder*, 43 Ark. 429, this court said: "The constitution, which contains our homestead law, has not, in express terms, anticipated and provided for every possible phase of the question. It therefore devolves upon the courts to construe and apply the law to new cases as they arise. Interpreting the law according to its spirit, and following the current adjudications, we hold, though with some hesitation, that when the association of persons which constitute the family is broken up, whether by separation or the death of some of the members, the right of homestead continues in the former head of the family, provided he still resides at his old home."

Now in the case at bar, J. P. Wooster, Sr., was the former head of the family,—that is the head of the family before the wife died, and the children had reached their majority and separated from the family, if, in fact, there was ever any such separation. He was also in possession at the death of his wife, through their tenant, Hardin, whose lease had not then expired, and he still had title sufficient to support a homestead claim, and the doctrine of Stanley *v.* Snyder, *supra,*—once a homestead always a homestead, as long as occupied and claimed as such— we think, applied to him; and it follows that his children, purchasing from him, took free from the claims of their father's creditors, and were entitled to the relief asked.

The decree is affirmed.

WOOD, J., dissenting.