SLAYDEN-KIRKSEY WOOLEN MILLS *v.* ANDERSON.

Opinion delivered April 22, 1899.

1. FRAUD—HUSBAND IMPROVING WIFE'S PROPERTY.—A husband will not be permitted to defraud his creditors by improving his wife's property with assets belonging to him.   (Page 421.)

2. FRAUDULENT CONVEYANCE—SUBSEQUENT CREDITORS.—Where land was purchased and paid for by the husband, and title taken in the name of his wife, with the actual intent to hinder and delay his creditors, the land is subject to debts of his creditors, both prior and subsequent. (Page 422.)

Appeal from Jackson Circuit Court.

RICHARD H. POWELL, Judge.

*S. M. Bains,* for appellant.

The burden was on appellee to show *bona fides.*   57 Ark. 573; 50 Ark. 46.

*M. M. Stuckey,* for appellees.

Fraud must be proved by him who alleges it.   8 Am. & Eng. Enc. Law, 654; 9 Ark. 483; 31 Ark. 554; 38 Ark. 425. Knowledge of or participation in the fraudulent intent is necessary to charge one with fraud.   32 Ark. 255; 60 Ark. 425; 61 Ark. 255.

RIDDICK, J.   The appellant, a corporation, recovered judgment against R. W. Anderson in January, 1895, for the sum of $236.98, and brought this action in equity to subject certain town lots held in the name of his wife to the satisfaction of the judgment.   Anderson had, for several years before the recovery of this judgment, been engaged in mercantile business at Jacksonport, Arkansas, but became embarrassed financially, and about December 10, 1894, failed in business, and was insolvent at the time this action was commenced.   Previous to his failure, he disposed of his stock of goods to his mother-in-law, Mrs. Nixon, in settlement of a debt which he claimed to have owed her.   She lived in Indiana, but Anderson continued to carry on

the mercantile business at Jacksonport in her name and as her agent. He had also, shortly before his failure, purchased several pieces of real estate, the conveyances for which were made to his wife, he claiming that she paid the purchase money. Plaintiff had an execution issued on the judgment above mentioned, and levied upon four lots in the town of Jacksonport. These lots had been purchased by R. W. Anderson from Bertha Gause in October, 1894, in the name of his wife, Mrs. E. J. Anderson, and the conveyance was made to her for a consideration of $25, as expressed in the deed. Afterwards, on the 3d day of November, 1894, Anderson and his wife conveyed said lots to James Nelson, the consideration named in the deed being also twenty-five dollars, and on the same day Nelson conveyed the same property with improvements thereon to J. E. Bridges in trust to secure the payment of a note from him to Mrs. E. J. Anderson for the sum of $700. Previous to the conveyance of these lots by Bertha Gause to Mrs. Anderson, R. W. Anderson and James Nelson had, with the intention of becoming the owners of the lots, improved the same by erecting thereon a mill building, with grist mill and attachments. The building was erected by R. W. Anderson and James Nelson under a contract between them by which it was agreed that Nelson was to furnish the mill wheel, buhr stones and his own labor, and Anderson was to furnish the building site, material for building, gearing for the mill, and pay all extra labor necessary in erecting same, and they were to be equal partners in the mill.

The question to be determined here is whether this mill property, or the note for $700, which the trust deed upon the property was given to secure, was the property of R. W. Anderson or of his wife. The circuit court decided that it was the property of Mrs. Anderson, and so dismissed the complaint for want of equity.

Now, if this mill property had been in fact paid for by the money of his wife, there was no reason why Anderson should not have made a full and fair statement about the matter. Nelson testified that he and Anderson were partners in the erection of the mill, that the lumber and other material that went into the mill were furnished by R. W. Anderson, and that, if Mrs. Anderson had any interest in the mill, he did not know it

He also said that the trust deed executed by him to Bridges and the note given to Mrs. Anderson for $700 were so executed at request of R. W. Anderson, and in settlement of matters between himself and R. W. Anderson.   Mrs. Anderson also testified that her husband and Nelson were jointly interested in the mill, and that Nelson owed her nothing.   It is plain, therefore, that, if Mrs. Anderson had any interest in this mill property, it was secured through her husband acting as her agent.   He must, therefore, have been familiar with the transactions in reference to the purchase of the lots and the erection of the mill, but of which his wife, according to her own testimony, knew almost nothing.   But when he was questioned about these matters, he seemed much disinclined to make a fair and full statement concerning them.   When asked about the terms of the contract under which Nelson had erected the mill, he at first denied knowing anything about it, and said he "guessed Nelson was running his own business."   When asked if he knew who paid Nelson for erecting the mill, he answered, "No; I don't know anything about it.   It is his own mill.   I don't reckon he got any pay for it."   To the question whether his wife had any interest in the mill before she received the deed from Bertha Gause, he answered:   "I don't remember.   I don't know what time the mill was put up."

Now, Anderson was an insolvent merchant.   He purchased and improved this property in his wife's name a short time before his failure, and while he was heavily in debt.   Instead of making a full and frank  disclosure of his wife's interest in the property, if she had any interest, his testimony is full of contradictions and evident evasions.   He displays such absurd ignorance of important transactions to which he must have been a party, either in his own behalf or as agent for his wife, that we can attach but little importance to his testimony.   Nelson, who was a disinterested witness, and seems to have made a fair statement, not only testified that Mrs. Anderson was not a party to the contract for erecting the mill, but that Anderson, in a conversation with him, said that if his creditors would let him alone he would pay out all right, but "if they came on to him he was going to be ready for them."

Now, even if the lots in controversy belonged to his wife,

Anderson would not be permitted to defraud his creditors by improving her property with assets belong to him. . *Seasongood v. Ware*, 104 Ala. 212; *Lynde* v. *McGregor*, 13 Allen, 182; *Humphrey* v. *Spencer*, 36 W. Va. 11; *Campion* v. *Cotton*, 17 Ves. (Eng.) 264. But a careful consideration of the evidence convinces us that these lots were purchased and improved by Anderson out of his own funds, and that he had the conveyance mentioned made to his wife in order to prevent the lots from being seized under executions against him.

It is true that the plaintiff introduced no evidence to show the time when Anderson became indebted to it. But the complaint, which was filed in May, 1895, alleged that Anderson had for more than two years been heavily embarrassed and in debt, and [was then insolvent. There was no denial of this allegation, and we must therefore take it as true. If the conveyance of the lots in question were paid for and improved by Anderson, and the title taken in his wife's name, with the actual intent to hinder and delay [his creditors, such land would be subject to debts of creditors, both prior and subsequent to such transaction. In equity, such lands would be treated as his property, and subject to his debts, whether such debts existed at the time such land was purchased or were contracted shortly afterwards. *May* v. *State National Bank*, 59 Ark. 614.

Our conclusion is that plaintiff made out its case, and that the court erred in dismissing its complaint. The judgment is therefore reversed, and the cause remanded, with an order that a decree be entered in accordance with this opinion.