PULLEN *v.* SIMPSON.

Opinion delivered April 1, 1905.

FRAUD—INSOLVENT DEBTOR IMPROVING WIFE'S HOMESTEAD.—An insolvent debtor may use his means, upon which his creditors have no lien, in improving his wife's homestead, if such homestead is within the maximum area and value permitted by the Constitution.

Appeal from Clay Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

*Block & Sullivan* and *G. B. Oliver,* for appellant.

1. John S. Simpson, previous to the sale under execution issued on the Peters Shoe Company stay bond, was the owner of at least an equitable interest in the property in suit.

2. The interest of said Simpson was subject to sale on said execution.

3. Even though the legal title in the land was in the name of the wife, the husband could not expend his money in improving it, to the detriment of creditors. 66 Ark. 419; 17 Ark. 105.

4. The title of said Simpson passed to Downman under the sheriff's deed at the execution sale. Kirby's Dig. § 3228; 42 Ark. 309. The contention of appellees that Annie Simpson acquired title under the sale from Cady is erroneous. If she and Cady were co-tenants, she had no right to purchase his right at the execution sale. 20 Ark. 381; 55 Ark. 104; 56 Ark. 187; 12 Ark. 421; 31 Ark. 343; 32 Ark. 97; 33 Ark. 267; 30 Ark. 95. There is nothing in the contention that this court in *Simpson* v. *Downman,* 63 Ark. 169, and *Simpson* v. *Biffle,* 63 Ark. 300, has held the title to the property to be in Annie M. Simpson.

*Hawthorne & Hawthorne,* for appellee.

Mrs. Simpson purchased the lots in controversy with her own money, and the subsequent interlineation of the name of J. S. Simpson in no way impairs her title. 63 Ark. 289. There was no lien upon the first homestead of Mr. and Mrs. Simpson, and they could legally sell it, and invest the proceeds in another homestead, without the same being subjected to execution and seizure; and Mr. Simpson could also use as much as $500 in personal property in the construction of a house as a homestead for himself and wife. 33 Ark. 763; 52 Ark. 101; 44 Ark. 180; 43 Ark. 429; 57 Ark. 242; 52 Ark. 547; 31 Ark. 546. If it be considered that Simpson did have any interest in the property, it was not such as was in reach of an execution at law. 1 Freeman, Ex. 137; 67 Ark. 325; 29 Ark. 612. The deed from Cady was valid.

*Block & Sullivan* and *G. B. Oliver,* for appellant in reply.

As to creditors' rights as against real property purchased by debtor with proceeds of homestead, see 33 Ark. 762.

HILL, C. J. This is the second appearance in this court of this litigation. *Simpson* v. *Biffle* and *Simpson* v. *Downman* were jointly disposed of December 12, 1896, in this court, and are reported in 63 Ark. at page 289. The facts are therein fully set out. On the remand of the cases, Downman dismissed them without prejudice, and on June 4, 1896, Pullen, this appellant, who had succeeded to the Downman title, brought this suit against Simpson and his wife. The substance of it was that Simpson had fraudulently put his money into the purchase and improvements of the lots in controversy, thereby withdrawing it from the reach of his creditors, and praying that the amount advanced for purchase and improvement by Simpson be ascertained, and that the plaintiff be declared the owner of the interest of Simpson therein, and the property be sold and the proceeds divided according to the respective interests, and that Mrs. Simpson also be chargeable with a proportion of the rents which represented her husband's interest in the property. The answer denied fraud on Simpson's part, alleged that the property was purchased with Mrs. Simpson's money, and improved with money derived from her and the sale of a former homestead and $400 contributed by Simpson and the balance from rents of the property. It set forth occupancy of the property as a homestead. There is a further title alleged in Mrs. Simpson, but it is not necessary to notice the issue upon it. The former appeal settled the title to the lots in controversy as being in Mrs. Simpson, and no evidence is adduced in this case to change the view then taken by the court of the effect of the evidence. This case was tried on the evidence in the preceding cause and some additional evidence. The most favorable view of the evidence for appellant is that a few hundred dollars over $500 was contributed by him to the improvement of his wife's property. This property was a homestead as against all the creditors except one, and that creditor's judgment was satisfied by the sale of the property at which Downman (to whose title Pullen succeeded) purchased, and his interest terminated with the satisfaction of the judgment. The title acquired was Simpson's, not Mrs. Simpson's, and it subsequently developed it was

her property; hence the purchaser acquired nothing. He was acting as a representative of a junior judgment creditor, but the judgment of that and all the other creditors was subsequent to the homestead impressment and these improvements. The question presented is whether an insolvent debtor can use his exemptions, and more in the improvement of his wife's homestead, when that homestead is within the maximum area and value permitted by the Constitution. An insolvent husband cannot use his means to improve his wife's property at the expense of his creditors; and when he does, the creditors have a charge upon the wife's property to the extent of the husband's investment therein. *Slayden-Kirksey Woolen Mills* v. *Anderson,* 66 Ark. 419; *Morris* v. *Fletcher,* 67 Ark. 105. Does this rule extend to the wife's homestead? The joint occupancy by husband and wife of a home the title to which is in the wife confers upon the wife a homestead in the property within the constitutional provisions. *Thompson* v. *King,* 54 Ark. 11; *Wilmoth* v. *Gossett,* 71 Ark. 594. Turn, then, to a consideration of the husband's interest in it. In *White S. M. Co.* v. *Wooster,* 66 Ark. 382, the court said: "He had, however, * * * a joint homestead right with his wife (she assenting, as appears to have been the case), growing out of his marital relations with her, as against the rest of the world." This is a substantial right and interest, and differentiates the homestead from the other property of the wife. The joint occupancy of it is essential to the homestead character of it, and, when thus occupied, it is preserved as the domicil of the husband and wife, free of creditors' liens. The improvement of such a homestead by the husband with his property exempt from seizure works no prejudice to a creditor, and its improvement by property or means, in excess of his exemptions, upon which the creditors have no liens, is within his right, provided the value or area of the homestead is not carried beyond the value and area permitted by law. At the time Simpson put his means into the improvement of this property he could have put those same means into purchasing a homestead in his own name, and then conveyed it to his wife, and none of the parties represented here could have complained; for it has frequently been held that the sale of the homestead is no concern of the creditors. *Gray* v. *Patterson,* 65 Ark. 373, and authorities there cited. If he could acquire the homestead and

improve it, and then convey it to his wife, there is no reason why he could not have conveyed it to his wife in the first instance, and improved it afterwards. The only judgment prior to the homestead impressment of this property was that of Peters Shoe Company. Under it the property was levied upon as Simpson's, and sold for more than the amount of Peters' judgment. That satisfied that judgment, and that creditor went out of the case. The purchaser at that sale made a bad bargain, as the property was subsequently proved and adjudicated to be the property of Mrs. Simpson at that time, and consequently the title which he acquired failed. The doctrine of *caveat emptor* is in fullest force in sales under execution. The purchaser cannot now help his bad bargain by tracing into the homestead of the wife money of the husband upon which neither he nor the judgment creditor (a creditor subsequent to Peters) for whom he was acting has a lien. As Simpson had a perfect right to devote this money to homestead purposes, the creditors have no complaint that it is put into a homestead in which he has a right of occupancy, instead of one in which he had title. Almost any interest has been held sufficient to sustain the homestead right. Leaseholds, estates by the curtesy, by the entirety, estates in common and parts of the homestead area when the other part is held by the wife. *Robson* v. *Hough*, 56 Ark 621; *White S. M. Co.* v. *Wooster*, 66 Ark. 382; *Simpson* v. *Biffle*, 63 Ark. 289; *Berry* v. *Meir*, 70 Ark. 129.

It would be inconsistent with these decisions, and the settled policy of liberal construction of homestead rights, to deny the husband the privilege of improving the homestead because the title thereto is in the wife.

He is at liberty to use such means as are free of creditors' liens, but cannot carry the value or area of the homestead beyond the maximum permitted by the Constitution.

The judgment is affirmed.