KELKER *v.* HENDRICKS.

5-1341                                306 S. W. 2d 691

Opinion delivered November 11, 1957.

*Paul E. Gutensohn,* for appellant.

*Hill, Fitzhugh & Brizzolara,* for appellee.

Ed. F. McFaddin, Associate Justice. The question here presented is whether the Chancery Court was in error in finding that certain transfers were fraudulent conveyances as regards the rights of the appellee, **who** was a *subsequent creditor* of appellant Andy J. Kelker.

On July 1, 1955, Andy J. Kelker became liable to Mrs. Gail Hendricks on a promissory note for $5,000 due July 1, 1956. When the note was not paid at maturity, Mrs. Hendricks filed this suit (in December, 1956) seeking judgment for the amount due and also seeking to set aside certain conveyances that Kelker had made to his wife, Loretta, who is also an appellant. The purpose of setting aside the conveyances was to subject the conveyed property to the judgment lien of Mrs. Hendricks. Trial in the Chancery Court resulted in a judgment for Mrs. Hendricks for the debt[1], and also a decree setting aside certain conveyances as fraudulent and subjecting the conveyed property to the lien of Mrs. Hendricks' judgment.

The Kelkers have appealed, and challenge here that portion of the decree holding the transfers to Mrs. Kelker to be fraudulent and enforcing Mrs. Hendricks' judgment against such property. Kelker does not here challenge the correctness of the money judgment. The Kelkers point out that the conveyances to Mrs. Kelker were *prior* to the note to Mrs. Hendricks; and claim that she did not sustain the burden of proving that the conveyances were fraudulent as to a *subsequent* creditor.

The law is well settled and unquestioned. Section 68-1302 Ark. Stats. reads:

"Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or things in action, or of any rents issuing therefrom, and every charge upon lands, goods, or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud

---

[1] By garnishment, Mrs. Hendricks was able to find $1,000.00 of funds belonging to Kelker, which amount was ordered to be credited on her judgment of $5,475.00.

creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void. (Rev. Stat., ch. 65, § 2; C. & M. Dig., § 4874; Pope's Dig., § 6071.)''

Some of our many cases involving this statute are: *Driggs & Co.'s Bank* v. *Norwood,* 50 Ark. 42, 6 S. W. 323; *Rudy* v. *Austin,* 56 Ark. 73, 19 S. W. 111, 35 A. S. R. 85; *May* v. *State National Bank,* 59 Ark. 614, 28 S. W. 431; and *Evans* v. *Cheatham,* 183 Ark. 82, 34 S. W. 2d 1076. In *Driggs & Co.'s Bank* v. *Norwood, supra,* we held that when an embarrassed debtor makes a voluntary conveyance of his property, his indebtedness makes a presumption of fraud against existing creditors, but a voluntary conveyance by a person in debt is not *per se* fraudulent as to his subsequent creditors; and to impeach such conveyance the subsequent creditors must prove actual or intentional fraud. The question here then becomes one of fact: did Mrs. Hendricks prove actual or intentional fraud by Kelker when he made the conveyances to his wife prior to the creation of Mrs. Hendricks' debt?

The evidence showed that in August, 1954 Kelker had an automobile collision; that, fearing a substantial judgment might be obtained against him, Kelker took approximately $30,000 in cash and went to Indiana and deposited the money to the credit of his wife; that thereafter, and from such funds, he made numerous ''trades,'' always taking the title in his wife's name. The Chancery Court was undoubtedly convinced that in these manipulations through his wife's bank account, Kelker was acting in fraud of subsequent as well as prior creditors. The facts here are strikingly similar to those in *May* v. *State National Bank, supra.*

The evidence also showed that Kelker was a partner in the Kelker-Payton Construction Company from 1954 to 1956. In the present case there was introduced in evidence by stipulation the findings of fact made by the Chancery Court in the case of *Payton* v. *Kelker* (affirmed by the Arkansas Supreme Court in the case

of *Kelker* v. *Payton*, 227 Ark. 369, 298 S. W. 2d 704). That case involved some of Kelker's dealings with the partnership (later corporation). We copy a few of the pertinent findings made by the Chancery Court in that case, which findings, as aforesaid, were brought into the record in this case by stipulation, to-wit:

"The Court finds that defendant Kelker owes to the corporation the following amounts by reason of the misapplication of corporate funds to his own personal use, to-wit: . . ." (Nine items).

"The Court further finds that the defendant, Andy Kelker, did wrongfully and unlawfully convert corporate funds with the knowledge and consent of his wife, Loretta Kelker, and that said funds were converted into assets belonging to Loretta Kelker . . ." (Several tracts of property here described).

"The Court further finds that the defendant Kelker owes to the corporation by reason of conversion of corporate funds to the property owned by Mr. and Mrs. Kelker . . ." (Property described and amounts stated).

"The Court further finds that the defendant Kelker did, with the consent and knowledge of the defendant, Loretta Kelker, convert corporate funds of the defendant corporation into property owned by Mr. and Mrs. Kelker . . ." (Described).

Kelker claims that he is, and was at all times, completely solvent; yet the fact remains that he has consistently manipulated his finances and properties so as to conceal assets required to pay the judgment held by appellee. He does not here challenge the judgment for debt, but challenges only that portion of the decree which would make available to Mrs. Hendricks' judgment the properties which he placed in his wife's name. It would unduly extend this opinion to recite all of the manipulations by Kelker. It is sufficient to say that the Chancery decree is not contrary to the preponderance of the evidence.

Affirmed.