Bobby L. HANNA and Delta HANNA *v.*
Walter MILLER, d/b/a MILLER COMPANY

CA 82-461                                657 S.W.2d 563

Court of Appeals of Arkansas
Division II
Opinion delivered October 5, 1983

*Henry & Mooney*, by: *John R. Henry*, for appellants.

*Fletcher Long, Jr., P.A.*, by: *Fletcher Long, Jr.*, for appellee.

TOM GLAZE, Judge. This case emanates from the chancellor's granting a $45,065 judgment against appellants, Bobby and Delta Hanna, who are husband and wife. The judgment was based on a written commodity agreement between appellee and appellant Bobby Hanna. Although Delta was not a party to the agreement, the trial judge declared the judgment a lien on her farm land and bank accounts because she assisted Bobby in wrongfully hindering and defrauding his creditors — in this case, the appellee. On appeal, appellants argue that the evidence does not support the court's (1) granting the judgment, or (2) imposing the judgment lien against Delta's property.[1] Regarding appellants' attack challenging the court's award of the judgment, we find the evidence clearly supports it; and we afirm that part of the trial judge's decision.

The thrust of appellants' first argument is that the extent of Bobby's underlying indebtedness was at most

---

[1]A third issue involving the award of attorney's fees was briefed, but appellee conceded error on this point. We agree the fees should not have been awarded, and we reverse on that issue without further discussion.

$5,000, and not the $45,065 amount found by the chancellor. The undisputed evidence reflects that on September 29, 1980, appellee and Bobby signed a commodity agreement under which Bobby commenced trading soybeans futures through his broker, the appellee. During the following two month period, Bobby successfully traded in the soybeans market, accumulating sufficient gains to enable him to withdraw $20,000 from his trading account. Matters changed in early December, 1980, when the soybeans market began to decline. As a result, appellee, acting under the terms of the parties commodity agreement, notified Bobby on December 8 that he would be required to advance an additional margin deposit in order to continue trading. At this point, we note that the parties agreed if appellee had removed Bobby from the market on December 8, 1980, his loss would have been $5,000 or less. However, because appellee did not withdraw Bobby from the market until December 10, 1980, his loss increased drastically to $45,065, the judgment amount ultimately granted by the chancellor.

The chancellor awarded $45,065 based on appellee's testimony that he left Bobby's account open until December 10 because Bobby stated as late as December 9 that he wanted to stay in the market as long as he could. When Bobby subsequently failed to advance the required additional margin deposit the appellee, per the parties' agreement, elected to terminate Bobby's account. On this point, Bobby admitted telling appellee on December 8, "I want to stay in as long as I have . . . money and then take me out." These instructions, Bobby contends, sufficiently apprised appellee so that he should have closed Bobby's account on the day they were given, *i.e.,* December 8. Appellee rebutted Bobby's testimony, stating that he never agreed to leave Bobby in the market for as long as he had credit; nor did he agree to take Bobby out of the market on December 8. The chancellor was in a superior position to determine the credibility of the witnesses on this crucial but conflicting factual issue, and we defer to the judge's finding on this point, *viz.,* that appellee, acting pursuant to the parties' agreement, reasonably and expeditiously closed Bobby's account on December 10, when his loss was fixed at the $45,065 amount. *See Burns* v. *Lucich,* 6 Ark. App. 37, 638 S.W.2d 263 (1982); Rule 52 (a), ARCP.

Although we agree that appellee is entitled to the $45,065 judgment against Bobby Hanna, we do not agree the judgment should be a lien against his wife's property. In imposing such a lien, the chancellor found that in 1974 Bobby had quitclaimed his interest in certain property to his wife, which left Bobby without assets and served as a hindrance and fraud on his subsequent creditors.

The sequence of events the chancellor relied upon began in January, 1972. At that time, Delta Hanna owned a farm in Poinsett County which she had purchased with $5,000 she inherited from her father. She sold this farm and used the proceeds to purchase land in Craighead County in 1974. When this sale was closed, the property was initially deeded to both Bobby and Delta Hanna. Six days after the sale closed, Bobby quitclaimed his interest in the property to Delta because she had expressed that she was the sole owner. In 1979, Delta sold the Craighead County farm and purchased the land which is the subject of controversy, and the deed reflects title held in Delta's name only. Eight months after purchasing the subject property, Bobby and Delta borrowed $80,000, and a mortgage was placed against the property, naming both Bobby and Delta as mortgagors. Since this property was purchased in 1979, Bobby and the appellants' two children have farmed it, and all proceeds, including rents, have been placed in Delta's account. It is undisputed that Bobby wrote checks on his wife's account.

From the foregoing evidence, the chancellor held that Bobby and Delta Hanna hindered and delayed Bobby's creditors because he had, in 1974, quitclaimed his interests in the Craighead County property to Delta, leaving himself with no assets. Considering that conveyance and the other factors cited, the chancellor imposed a lien on Delta's land and bank account even though appellee's judgment was based on an agreement entered into solely with Bobby and which did not take effect until after September 29, 1980.

Upon imposing such a lien, the chancellor relied on Ark. Stat. Ann. § 68-1302 (Repl. 1979), which provides:

> Every conveyance or assignment, in writing or other-
> wise, of any estate or interest in lands, or in goods and

chattels, or things in action, or of any rents issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void.

Section 68-1302 has been construed on several occasions, and in *Kelker* v. *Hendricks*, 228 Ark. 222, 306 S.W.2d 691 (1957), the Supreme Court recounted the following established rule:

> In *Driggs & Co.'s Bank* v. *Norwood,* [50 Ark. 42, 6 S.W. 323 (1887)], we held that when an embarrassed debtor makes a voluntary conveyance of his property, his indebtedness makes a presumption of fraud against existing creditors, *but a voluntary conveyance by a person in debt is not per se fraudulent as to his subsequent creditors; and to impeach such conveyance the subsequent creditors must prove actual or intentional fraud.*

*Id.* at 228, 306 S.W.2d at 692 (emphasis supplied).

In the early case of *May* v. *State National Bank,* 59 Ark. 614, 28 S.W. 431 (1894), the Supreme Court, considering the rule against fraudulent conveyances, limited its application, stating:

> [T]he courts will properly refuse to interfere with such conveyances in behalf of subsequent creditors when they are not merely colorable, and have been long acquiesced in; *or when the length of time elapsing between the conveyance and the creation of the debt, taken in connection with other circumstances in proof, is sufficient to raise a belief that the plaintiff was not injured or defrauded by the conveyance.* Each case must depend upon its own surrounding circumstances.

*Id.* at 625, 28 S.W. at 434 (emphasis supplied). *See also, Slayden -Kirksey Woolen Mills* v. *Anderson,* 66 Ark. 419, 50 S.W 994 (1899), wherein the Court recognized the rule announced in *May,* and noted that in equity, a wife's lands would be treated as the husband's property and subject to his debts, whether such debts existed at the time such land was purchased or were contracted *shortly afterwards.*

Of course, in the instant case, Bobby's indebtedness to appellee did not exist at the time of the 1974 conveyance; nor was it contracted shortly afterwards. Instead, Bobby's in - debtedness arose over six years after his earlier conveyance to his wife. That conveyance (and all subsequent conveyances) were recorded and reflected Delta as title holder when the appellee contracted with Bobby. In addition, there is no evidence that Bobby's quitclaiming any interest he might have had in the Craighead County property caused him to be insolvent at that time, nor does it appear from the record that he was insolvent at the time he contracted with the appellee.

An intent to defraud a subsequent creditor must be shown before a voluntary conveyance will be avoided. *See May* v. *State National Bank, supra.* Such a subsequent creditor must prove fraudulent intent by evidence which is clear, cogent and convincing. *See United States* v. *Johnston,* 245 F. Supp. 433 (W.D. Ark. 1954). From our review of the evidence, we find the trial judge clearly misapplied § 68-1302 to the facts at bar, and in this respect, we reverse.

Affirmed in part and reversed in part.

CRACRAFT and CLONINGER, JJ., agree.