LITTLE *v.* FARM BUREAU CO-OPERATIVE MILL & SUPPLY, INC.

5-516                                          272 S. W. 2d 818

Opinion delivered November 29, 1954.

*Carlos B. Hill,* for appellant.

*Wade & McAllister,* for appellee.

J. SEABORN HOLT, J. This is a suit to foreclose a lien on a Chattel Mortgage covering the following property: "1,500 Broilers, feed for same; 2 Yellow Jersey Cows, 2 years old; 1 Red Cow, 5 years old; Dividends in Farm Bureau Co-Operative Mill & Supply; 4 Brooders; 50 Feeders."

October 10, 1951, appellant, Clyde Little, became indebted to Arkansas Farm Finance, Inc., in the amount of $900.00, evidenced by a note on even date, together with the above Chattel Mortgage, as security. Later, Finance, Inc., endorsed and delivered the note to appellee, Farm Bureau Co-Operative Mill & Supply, Inc., for value, and appellee, as owner, sued to collect $1,409.87 alleged to be due and unpaid, for feed and supplies furnished Little.

The issues raised by the pleadings were, by agreement and stipulation, reduced to a single fact question as follows:

"It is . . . agreed and stipulated by and between the parties hereto that the sole question of fact to be determined by the Court is whether or not the defendant fed or allowed to be fed the feed furnished to him by the plaintiff as above set forth, to hogs, cows, or livestock, other than to the chickens of the defendant being fed under the agreement between the parties and between the dates of Octobr 9, 1951, and March 4, 1952.

"It is further agreed and stipulated by and between the parties hereto that if the ruling of the Court in answer to the above interrogatory is in the affirmative, that the defendant consents to the entrance of a judgment in favor of the plaintiff as against the defendant in the total sum of One Thousand Four Hundred Nine and 87/100 Dollars ($1,409.87), together with interest at

the rate of 6¾ per cent per annum from May 29, 1952, together with the costs of this action, and a decree of foreclosure of the above described Chattel Mortgage in order to satisfy said judgment.

"It is further agreed and stipulated by and between the parties hereto that if the ruling of the Court in answer to the above interrogatory is in the negative, that the plaintiff consents to a judgment to dismiss its Complaint filed herein against the defendant, with the costs of this action to be assessed against the plaintiff. Dated this 22nd day of May, 1953."

Trial resulted in a finding by the Court that the above interrogatory should be answered in the affirmative and from a decree in favor of appellee is this appeal.

While the evidence is conflicting, we have concluded that the Chancellor's findings are not against the preponderance thereof.

On behalf of appellee, Delmer Smith, a boy seventeen years of age (a disinterested witness), testified that he was well acquainted with Mr. Little, frequently visiting at his home. He testified: "Q. Between October 9, 1951, and March 4, 1952, had Clyde Little purchased 1,500 baby chicks from the Farm Bureau Co-Operative of Lincoln, Arkansas? If so, was he feeding out these baby chicks with feed purchased from the Farm Bureau Co-Operative Mill & Supply? A. I heard him talk about purchasing them from the Farm Bureau Co-Operative. I heard him talk about feeding them out. Q. Did you ever visit the place where Clyde Little was feeding these chickens between October 9, 1951, and March 4, 1952? If so, on how many occasions? A. Yes; I would go by after school to play with the boys. Q. What did you observe with reference to whether or not any dogs, cattle, hogs or any other livestock were eating the chicken feed at the time of your visit with Clyde Little? A. I saw him feed it to the cows. Q. If so, on how many occasions did you observe other livestock eating this chicken feed? A. About every time I was up there at milking time, about four or five times. . . . They would bring the

feed from the chicken house down to the barn and the boys would do the feeding. I certainly knew it was chicken feed. Said nothing to Mr. Little about it. . . . I don't remember the dates; usually in the evenings. The family was there at feeding time including Clyde Little. Didn't say anything to them."

Alva Spear, manager of the Farm Bureau Co-Operative, testified in substance that on October 9, 1951, he sold 1,500 baby chicks to appellant, that appellant fed these broilers with the Co-op feed between October 9, 1951, and March 4, 1952, and that he visited Little's place six times. On each visit, he stayed approximately fifteen minutes and saw forty or fifty hens in a pen, but there was no feed in the feeders. He also saw two hound dogs. He told Little that the feed was going for something besides that for which it was intended and he wished appellant would prevent it because if he didn't they "were going to wind up in bad."

Paul Connor testified: "Q. Did you observe Clyde Little feeding broiler feed to any hens, cows, dogs, livestock between October 9, 1951, and March 4, 1952? A. Yes, sir. Q. Will you tell the Court when and where and what you saw, please? A. Well, I saw him feed some cows (six) chicken feed. Q. On how many occasions? A. One time. . . . He just said it was chicken feed."

Apart from his own testimony, appellant offered that of his wife and his son, all of whom contradicted the testimony of appellee's witnesses.

As indicated, when all the testimony is considered, we cannot say that the findings and decree were against the preponderance thereof. While we consider the case *de novo* here, under our long established rule, we do not disturb the decree of the Chancery Court on a fact question, unless we should determine that the findings were against the preponderance of all the evidence. *Lupton* v. *Lupton,* 210 Ark. 140, 194 S. W. 2d 686.

Here, it was entirely proper and indeed a commendable practice for the parties to stipulate that the only

issue was the single one therein stated. *Giberson* v. *Wilson,* 79 Ark. 581, 96 S. W. 137.

Accordingly, the decree must be and is affirmed.