WELLS *v.* HILL.

5-687                                                                 283 S. W. 2d 116

Opinion delivered October 24, 1955.

*Thorp Thomas, James L. Sloan* and *Roy Finch, Jr.,* for appellant.

*Spitzberg, Mitchell & Hays,* for appellee.

J. Seaborn Holt, Associate Justice.  March 2, 1953 Appellant Wells (Seller) and Appellee Hill (Purchaser) entered into the following ''Sales Agreement and Note'': ''L. L. Wells does hereby sell and convey to James R. Hill the Dairy Bar store interest he now holds, and known as Jim's Dairy Bar, located at 3601 Conway Pike, North Little Rock, Arkansas, including all equipment, prepaid insurance, meter deposits and does hereby sub-lease said property as follows: Total price $5,647.00 to be paid as follows: Down payment of $1,400.00 is hereby acknowledged.  Purchaser is to assume 14 monthly payments of $171.71 per month and will make these payments to L. L. Wells on the first day of each month commencing April 1, 1953 and terminating when paid in full for a total of payments amounting to $2,403.94 which leaves a balance of $1,843.06 plus $110.04 interest for a total amount of $1,953.10 owed to L. L. Wells to be paid as follows: $108.50 per month commencing April 1, 1953 and each month to and including November 1, 1953 and said $108.50 payments to commence again March 1, 1954 to and including November 1, 1954, making a total of eighteen (18) months at $108.50 and a grand total of $1,953.00.

''Rental on said building will be paid direct to M. E. Witkowski, (the owner) as follows, $100.00 per month commencing March 1, 1953 to and including November 1, 1953 and same each and every year so long as lease on said building is in effect or until March 1, 1963 if purchaser so desires.''

Operations under this instrument began March 1953 and continued until November 1953.  Hill made the initial payment of $1,400.00 and in addition, seven (7) of the $171.71 installments.  None of the $108.50 installments were paid.  In December 1953 Hill ceased operations and Wells took charge of the business and shortly thereafter, in March 1954, Wells entered into a contract with Andrew Nahlen to sell to Nahlen the business for $5,500.00, payable $2,000.00 down and the balance at the rate of 50¢ on each gallon of ice cream mix sold by Nah-

len, with a monthly accounting to Wells of the sales. Rent of $100.00 per month on the building, to Witkowski (owner), was to be paid direct to Wells. Subsequent to this sales contract of Wells to Nahlen, Hill brought the present suit against Wells for his equity in the business and for an accounting. Hill alleged that he had paid Wells a total of $2,953.43 under the terms of his agreement above with Wells, and further, ''During the month of. March, 1954, the defendant (Wells) arranged for a sale of the business referred to in the attached contract for a consideration represented by him to be $5,500.00. This sale was made under an agreement with the plaintiff (Hill) whereby the business would be sold and the plaintiff and the defendant would share in the proceeds of the sale in proportion to the amount that each had invested in the business. The defendant had paid the plaintiff the sum of $300.00 as a part payment of the latter's share in the proceeds from the sale of this business. The defendant has promised to account to the plaintiff for the latter's share of the proceeds from this sale, but he has failed and refused to do so.'' Appellant's answer was in effect a denial of every allegation in the complaint.

Trial resulted in a finding by the Court that Wells was acting as the agent of Hill when he (Wells) sold the business to Nahlen and that Hill had never surrendered any equity he might have in the business and was entitled to an accounting. Wells was credited with the purchase price stipulated in the sales contract between him and Hill and the remaining balance of the sales contract between Wells and Nahlen was ordered paid to Hill. From the decree is this Appeal.

For reversal, Appellant says: ''The decision of the Trial Court is contrary to the evidence and the law.'' We do not agree with either contention.

The finding of the Court that Wells was acting as Hill's agent when he sold the business involved to Nahlen is, we hold, not against the preponderance of the evidence. Hill testified in effect that he decided to sell

the business in January 1955. When he told Wells that he wanted to sell, Wells tried to dissuade him, but when Wells saw that he (Hill) was determined to sell, Wells said: " 'We will go ahead and sell the store and get your equity out of it.' It was approximately the latter part of February or a few days after we made this agreement I went out to the store and cleaned it up and painted it and gave Mr. Wells one key to the store. The latter part of February Mr. Wells sold the store to Andy Nahlen. The 5th of March I went out to the store to teach Mr. Nahlen to operate the machine and draw the product out of the syrup and the next day I went back to help Mr. Nahlen get one of the machines running that had broken down, and approximately a week later Mr. Wells came to Rebsamen and gave me a check for $300.00 and said, 'We will get together next week and settle out the rest of your equity,' . . . I never did make an agreement to terminate the first contract, (Wells-Hill)." The record reflects that Wells, in response to request for admission of facts by Hill, stated: "Defendant admits that he made a statement to the plaintiff subsequent to the sale of the business to Mr. Nahlen that defendant did not know the plaintiff's share of the proceeds from this sale but that defendant would have his accountant determine plaintiff's share."

There was other evidence tending to corroborate Hill. While Wells' testimony tended to contradict that offered by Hill, after a careful review of it all, without detailing it, we are unable to say, on trial de novo here, that the Court's findings were against the preponderance thereof. *Little* v. *Farm Bureau Co-Operative Mill & Supply,* 224 Ark. 289, 272 S. W. 2d 818, and *Lupton* v. *Lupton,* 210 Ark. 140, 194 S. W. 2d 686.

Having concluded that the Trial Court correctly found that Wells acted as Hill's agent in selling the business, then certainly as such agent the law required him (Wells) to account to his principal (Hill) for any funds which he received for Hill. Affirmed.