KELKER v. PAYTON.

5-1164                                       298 S. W. 2d 704

Opinion delivered February 18, 1957.

*Paul E. Gutensohn,* for appellant.

*Hardin, Barton, Hardin & Garner,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Andy J. Kelker, and appellee, W. W. Payton, entered into a partnership in January, 1952, for the purpose of constructing homes in the city of Fort Smith, Arkansas. In February, 1953, the Kelker-Payton Construction

Company, Inc., was organized as a corporation doing the same type of construction work, and still in existence at the time of this litigation, though it had ceased actual construction operations, and had only potential assets. The corporate stock was owned by Kelker and Payton equally. On May 14, 1954, Kelker loaned to the corporation (Kelker-Payton Construction Company, Inc.) the sum of $10,000. This was deposited in the First National Bank of Fort Smith to the corporation account. It was entered in the books of the corporation at that time, and has been carried as a debt owed Kelker by said corporation.

During the period of time in which they were actively associated together a loan of $17,500 was obtained from the United Building and Loan Association on five houses which were constructed in Fort Smith ($3,500 each), which, after loan expenses, netted $17,-041.45. A check was made payable to Kelker and wife and Payton and wife for said amount, and after being endorsed by all parties, was cashed at the Merchants National Bank of Fort Smith by Payton. Appellants contend that this money was divided equally between the two men in cash, while appellee Payton contends that Kelker was first repaid the $10,000 which he had loaned the corporation, and that the balance of $7,041.45 was then divided equally.

On June 9, 1955, appellee filed suit seeking an accounting of the affairs of Kelker-Payton Construction Co., and an accounting by appellant and wife, Loretta, for credit of Kelker-Payton Construction Co., Inc., covering funds used for labor and materials in the construction and repair of homes (three in number) owned individually by the wife, Loretta Kelker[1], and further asking that a constructive trust be declared by the Court upon these properties in favor of the corporation; that after an accounting by the said Kelker, he should be required to pay into the corporation all sums

---

[1] The complaint alleges that the wife paid no consideration, but "fraudulently, unlawfully, and wrongfully conspired with the defendant, Andy J. Kelker, her husband, to acquire title to said property. * * *"

"which he had wrongfully, unlawfully, and fraudulently appropriated."

Thereafter, Kelker-Payton Construction Company, Inc., filed its separate answer asking that the Court direct an accounting of the affairs of the corporation to determine whether either appellant (Andy Kelker) or appellee Payton profited to the detriment of said corporation, and that after an accounting, judgment be given the construction company against either or both stockholders for any diversion or misapplication of funds. Later, appellants filed their answer denying the allegations and joined with the construction company in asking for an accounting. Still later, appellant, Andy Kelker, filed a cross complaint, together with amendments alleging that he was due the sum of $6,080.91, representing advances that he had made to the partnership. Subsequently, amendments were filed to the pleadings by the parties alleging additional items, and on March 28th and 29th, the cause proceeded to trial.

On April 4th, the Court filed its findings of fact, and (after the filing of various motions and stipulations by the several parties pertaining to debits and credits between the individuals and the corporation) entered its decree on May 3, 1956. Kelker received judgment against Payton in the sum of $1,000; Payton received judgment against Kelker-Payton Construction Co., Inc., in the amount of $3,385.10; and the corporation received judgment against Kelker in the sum of $5,717.77. The Court further impressed a constructive trust against part of the properties held by Loretta Kelker to secure the judgment given to the corporation. From such decree appellants bring this appeal. Appellants rely upon several points to reverse the decision of the Chancellor, though the principal one argued is that the Court was in error in finding that appellant Kelker was repaid the $10,000 which he loaned to the corporation.

About May 14, 1954, the corporation was in need of funds to meet corporation payrolls, and Kelker agreed to deposit ten thousand dollars in the corporation account with the understanding that he was to be repaid

from the loan which would be received from the United Building and Loan Association. He directed that this repayment be made in cash and did accordingly make such deposit to the corporation account; three days later the loan from the United Building and Loan Association was processed, and check in the amount of $17,041.45, payable to Kelker and wife, and Payton and wife, was delivered to the parties. The two men then drove by their respective homes and the wife of each endorsed the check. They then proceeded to the bank, at which time Kelker let Payton out of the car to cash the check, advising that he would meet him at the Wide-Awake cafe. Appellee cashed the check, receiving the full amount in cash, and then went to the Wide-Awake cafe to meet Kelker.

So much is in agreement, but from this point on, the evidence was in conflict. Payton stated that as he went in the front door of the cafe, Kelker was standing talking with an acquaintance, and on observing Payton, walked over. They left together, got in the car, and drove to Kelker's house. It was time for lunch, and Kelker was let out at his home; however, before he left the car, the money was divided between the two of them in the following manner. First, Kelker counted out to himself the $10,000 which he had loaned the corporation, leaving a balance of $7,041.45, which was then divided equally between the parties ($3,520.73 to each)[2]. Payton took his money home, leaving it with his wife for safe keeping. According to Payton, Kelker advised he would see that an entry was made on the corporation's books to show the item had been paid back to him. Mrs. Payton, wife of appellee, testified that her husband brought home the $3,520.73, and thereafter she had occasion to talk to Andy Kelker in her home relative to the matter; that she had not been satisfied with the manner in which it had been handled, as she felt the check should have been deposited. Kelker told her there was nothing to worry about, and that he would make an entry on the books to take care of it.

---

[2] The record does not reflect who received the odd cent.

Kelker's version is as follows: He was sitting in a booth with L. D. Moran (associated with Kelker in the construction of a furniture building) when Payton came to the booth with the $17,041.45; that this money was divided equally between the parties in the booth, and in the presence of Moran ($8,520.73 to each). Moran corroborated Kelker's testimony to the effect that several bundles of money were counted out, but stated that in his opinion, the amount divided amounted to seven or eight thousand dollars. This last, of course, would be a circumstances corroborating Payton's version. Additional circumstances tend to corroborate either version. In appellee's favor, it is noted that Kelker, from the time of making the loan, made no demand for repayment of the $10,000; on the other hand, there was no release of the debt, nor receipt obtained by Payton, nor was any demand made on the bookkeeper to show that the loan had been paid. Payton's answer is that he trusted Kelker implicitly.

The Court found as follows: "The Court further finds that in regard to the $10,000 loan by Kelker to the corporation being repaid, the following: That plaintiff's testimony was undisputed by defendant Kelker that Kelker made said loan to the corporation in cash on May 14, 1954, upon condition that said loan would be repaid on or about May 17, 1954, in cash. That Kelker did not want said sum deposited in his account, and did not want any check from said corporation. That on May 17, 1954, $17,041.45 was received in one check from a local loan company payable to defendant corporation, and said check was cashed, and all of the money was received by plaintiff and Kelker. The Court further finds that the only dispute was that Kelker claims he did not receive his $10,000 loan before the balance of the proceeds was divided equally between these two men.

"The Court further finds that since that date until the audit made on and by said corporation, Kelker made no demand for repayment of said loan. The Court further finds that plaintiff's testimony that Kelker did receive his $10,000 loan back is supported by the testi-

mony of plaintiff's wife. The Court further finds that Kelker's witness to the meeting between plaintiff and Kelker, at which time said witness stated a large sum of money was divided equally between these two men, specifically stated that the sum divided equally was "between seven and eight thousand dollars," and that fact corroborates plaintiff's statement that Kelker got his $10,000 first and the balance, to-wit: $7,041.45 was divided equally between the two men."

Appellants contend that the check for $10,000 was payable to the partnership rather than to the corporation; that the corporation did not pay the indebtedness, and even if Payton's version is taken as correct, Kelker was repaid the loan from partnership funds. Since the men had been equal partners, this would leave Kelker paying to himself, in repayment of the loan, $5,000 of his own money, which a man of Kelker's business experience would not be likely to do. While confusing statements were made by counsel as to their position on the question of whether the partnership assets and liabilities were merged and assumed by the corporation at the time of its creation, the record reveals that appellants' counsel (R. 25) made the remark during the trial, "Your Honor, to simplify things, we will agree that the corporation started by taking over the partnership assets, and there is no question between the parties as to that."

The Court found, after hearing the evidence, "That upon the formation of the corporation the partnership assets and liabilities were merged and assumed by the corporation. That said corporation was formed with the assets of said partnership."

Following the Court's entering of its finding of fact, further motions clarifying the various items of indebtedness owed to the corporation and to the individuals were filed by the respective parties and certain stipulations were entered into pertaining to credits and debits between the individuals and the corporation. This had the effect of amending the court's findings. It is noticeable that appellants, though they filed several motions adjusting the rights of the parties, never raised the ques-

tion at all that the Court had erred in refusing to recognize the separate identities of the partnership and the corporation.

It is contended that the Court erred in holding that a constructive trust should be impressed upon the property held under the name of Loretta Kelker; however, this contention is based upon the fact that the $10,000 item had not been repaid to her husband; further, it does not appear that she invested any of her own money in the construction of the homes upon which the trust was impressed.

It is further contended that the Court erred in granting appellee judgment against Kelker-Payton Construction Company, in granting the company judgment against Kelker, and in failing to render judgment for the corporation against Payton for corporate funds which he was alleged to have used personally[3].

This brings us to our conclusions in the entire matter. This case is almost entirely a question of fact, and if the lower court construed the facts correctly, there could be no contention that the law was erroneously applied. The Chancellor heard the case, had the opportunity to observe the demeanor of the witnesses, and evidently paid close attention to the evidence. On April 4, 1956, he rendered his findings of fact composed of seven and one-half pages. The rule, so many times reiterated, is to the effect that while this court tries Chancery cases *de novo,* still it will not reverse a Chancellor's decree unless his findings are against the weight of the evidence. *Lupton* v. *Lupton,* 210 Ark. 140, 194 S. W. 2d 686 (1946); *Little* v. *Farm Bureau Co-Operative Mill and Supply Co.,* 224 Ark. 289, 272 S. W. 2d 818. We cannot say, in this case, that the findings of the court are against the weight of the evidence. The decree, accordingly, is in all things affirmed.

---

[3] The corporation did not appeal from the findings of the Chancellor.