McFADDIN, J., concurs; WARD, J., dissents.

WARD *v.* UNIVERSAL C.I.T. CREDIT CORP.

5-1383                                                   307 S. W. 2d 73

Opinion delivered November 25, 1957.

*Ralph E. Wilson,* for appellant.

*Wright, Harrison, Lindsey & Upton* and *Reid & Burge,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Ed Ward, filed this suit to set aside a conditional sales contract on the grounds of usury. Ward purchased a Dodge truck from the Louis George Motor Company, according to his allegations, for the sum of $2,580. He traded in two trucks for the new one, and contends he was allowed $900 for same, less a debt of $500 owed on the trucks to the Planters Bank, which was paid off by George. Ward signed a conditional sales contract for $2,831.35, which was assigned to appellee, Universal C.I.T. Credit Corporation. Appellant contends the interest amounted to $376.20, and that said amount was usurious, over and above 10 per cent per annum, to the extent of $143.79. Appellee contends that the parties traded for a "difference", ($1,818 plus the $500 due the bank)[1] rather than a specified amount, for the sale of the truck. The contract assigned to C.I.T. called for the payment of $2,831.35[2], for which George was paid $2,318. After making one payment, Ward filed the instant suit. Appellee filed its answer denying the charge of usury; counterclaimed by setting up that appellant was in default, and by reason of the acceleration clause, declared the entire balance of $2,739.30 due and payable; asked that an order be issued for the seizure of the truck. The affidavit for the order of seizure declared the truck to be of the value of $2,000. In order to retain possession of the truck, Ward furnished a bond, signed by Melvin and Louis Lapides, that Ward "shall perform the judgment of the court in this action." After hearing the proof, the court held that the contract was not usurious, and granted judgment against both Ward and the sureties in the sum of $2,739.30 and costs. From such judgment, Ward brings this appeal. No notice of appeal was given by either of the sureties.

[1] The amount due the bank was actually $523.88, but appellant paid the $23.88 in cash.

[2] Payment scale, covering two year period, called for four payments at $90.58; one at $748.01; nineteen at $90.58.

For reversal, appellant first contends that more than 10 per cent interest was charged under the contract, and same accordingly should be cancelled as usurious. Ward and George relate an entirely different version of the transaction. Ward simply contends that the purchase price of the Dodge truck was $2,580, less a down payment of $400, (trade-in of his trucks) plus insurance charge of $275.15, leaving a balance of $2,455.15 to be financed in 24 monthly payments. Subtracting this figure from the conditional sales contract of $2,831.35 leaves a finance charge of $376.20. Under this theory, the contract would be usurious. George testified that he and Ward (who was a part-time salesman for the George Motor Company) reached an agreement whereby Ward would trade in the trucks, and pay a balance of $1,818. $523.88[3] was still owed on the two trucks to the Planters Bank. Adding the $500 gives $2,318. George states this was the sole basis of the trade; no purchase price was mentioned; nor was any trade-in price agreed upon; they simply traded on the difference. After driving the truck for two months, Ward asked for a bill of sale in order to buy a state license. He was given a bill of sale for $3,218, though George testified this was no more the actual figure than was the $2,580[4]. According to George, Ward asked that this figure be changed so he wouldn't have to pay so much sales tax. "* * * Since he had been working for me, and it is a common practice for all dealers to cut the price down to save on the sales tax when they put a balloon price on both trade-in and sale price so they can finance the deal, and I cut the price down to what I figured the trade-ins would bring, and the difference I charged him, and that was to save on his sales tax, which he wanted, and we took up the other bill of sale and tore it up. * * *" Appellee's theory, accordingly, is that its contract for $2,831.35 covered $2,318 paid the dealer (trade-in difference of $1,818 plus the $500 paid the bank), and insurance premiums paid by it in the

[3] See footnote 1.

[4] George had sent C. I. T. a worksheet with the figure $3,218 and showing a trade-in of $1,400 as a boost of both prices in order to give Ward enough for a down payment.

amount of $275.15, thus leaving a carrying charge of $238.20. Let it be pointed out that the charge of usury does not involve the insurance items. Ward signed the "insurance election" contained in the contract, and does not contend that such insurance bought in his behalf was a charge to cover usury. Appellee admits that if $2,580 was the purchase price, the contract was usurious; on the other hand, appellant concedes that if the dealer's version of the contract is correct, then the contract is not usurious.

The answer to the litigation therefore resolves itself into the simple question of which evidence the Chancellor accepted. Both versions of the transaction cannot be correct. This court has held many times that it will not disturb the findings of the Chancellor unless they are against the preponderance of the evidence. *England* v. *Scott*, 205 Ark. 47, 166 S. W. 2d 1014; *Kelker* v. *Payton*, 227 Ark. 369, 298 S. W. 2d 704. Appellant's evidence, as to the transaction, consisted of his own testimony, and the bill of sale. Appellee's evidence, as to the transaction, consisted of the testimony of George, Eva Langston, bookkeeper for George Motor Company, (whose testimony verified George's statement that Ward asked that the sale price be reduced in order to save sales tax) and a copy of invoice showing the price to be $3,218. We are unable to say that the court's findings were contrary to the weight of the evidence.

It is next contended that the judgment should not have been rendered against the sureties in the amount of $2,739.30, even though judgment for such amount be entered against Ward, for the reason that appellee, in its petition for order of seizure, only alleged the value of the Dodge truck to be $2,000; it is insisted that the liability on the bond is limited to that extent, though it does provide that Ward "* * * shall perform the judgment of the court * * *". We dispose of this contention by pointing out that the sureties did not join in this appeal nor give any notice as re-

quired by statute. Section 27-2110[5], .1, Ark. Stats., reads as follows:

"Parties interested jointly, severally, or otherwise in a judgment or decree may join in an appeal therefrom; or, without summons and severance, any one or more of them may appeal separately, or any two or more of them may join in an appeal."

Ward did separately appeal, but the sureties, who had the like right, failed to do so. The sureties were parties; they sought separate and additional relief from that sought by Ward, averring that their liability did not extend to the full amount of indebtedness claimed by appellee. This contention was presented to the trial court. The Messrs. Lapides, in signing supersedeas bond (to supersede the judgment against them), described themselves as "appellants"; yet no notice of appeal was ever filed. The filing of notice of appeal within the time prescribed by law is a jurisdictional prerequisite to the appeal. *General Box Co.* v. *Scurlock*, 223 Ark. 967, 271 S. W. 2d 40. There is, accordingly, no appeal before us from the sureties to be passed upon.

The judgment of the Chancery Court is, in all respects, affirmed.

---

[5] Act 555 of 1953.