WILHELM *v.* McLAUGHLIN.

5-1540                                      313 S. W. 2d 821

Opinion delivered June 2, 1958.

[Rehearing denied July 1, 1958.]

*Rex W. Perkins, C. A. Fuller* and *E. J. Ball,* for appellant.

*O. E. Williams,* for appellee.

CARLETON HARRIS, Chief Justice. The issue in this appeal is whether appellants were acting in a fiduciary relationship to appellee in certain real estate transactions. Appellant, Jeanne Luptak, is a resident of Eureka Springs, Arkansas, where she has operated a motel

for several years. Milton Wilhelm is a real estate broker with an office in Eureka Springs. Appellee, Margaret O. McLaughlin, has been a resident of Eureka Springs since September, 1955. Prior to such date, she lived in a Chicago suburb. Mrs. Luptak and Mrs. McLaughlin are cousins. Mrs. McLaughlin, who was nearing the age of retirement, became interested in Eureka Springs. On an occasion when Mrs. Luptak went to Chicago to bring her husband back to Eureka Springs for a vacation, Mrs. McLaughlin returned with them, and purchased property known as the "Baker property." Wilhelm, a friend of Mrs. Luptak, bought and sold several pieces of property for appellee. On January 31, 1957, Mrs. McLaughlin instituted suit against Wilhelm, alleging that he had represented her in the purchase of certain property, designated as the Vaughn Street or Jeske property, had purchased same with her money (though he received the deed), and had charged her $7,000 while the actual consideration was only $3,300, and asking that he be made to account for the difference. She alleged other property sales and various loans to Wilhelm, stated she was unable to obtain an accounting, and prayed the court to require him to account for all sums due her from the transactions. On March 23rd, she amended her complaint by joining Mrs. Luptak, J. D. Carter, and Manufacturer's Casualty Insurance Company as defendants. As to Mrs. Luptak, it was alleged that the latter purchased a piece of property for Mrs. McLaughlin from Mrs. Hazel Baker for the sum of $4,000, but that Mrs. Luptak had represented to Mrs. McLaughlin that the price was $5,500, and appellee asked that Mrs. Luptak be required to account for the difference. She alleged that Carter was a partner of Wilhelm, and had received $1,000 from the Vaughn Street transaction. The insurance company was surety on the bonds of Wilhelm and Carter for the years 1955 and 1956 in the amount of $2,000 each (under the provisions of Act 395 of 1951), conditioned on compliance with Arkansas Statutes 71-1301 through 71-1311.[1] Appellants

---

[1] These sections relate to licensing of real estate brokers, causes for revocation of license, etc.

denied the allegations, as did Carter, who also filed a cross complaint against his co-defendant, Wilhelm, alleging that Wilhelm had sold various properties, including those heretofore mentioned, and had not paid him his proper share of the commission as per the agreement under which they operated.[2] The cause proceeded to trial, and at the close of appellee's evidence in chief, appellants and Carter filed their separate demurrers to the evidence. The court sustained the demurrer as to Carter, and overruled the demurrers of appellants. On concluding the trial, the court rendered judgment against Wilhelm for $3,700, against Mrs. Luptak for $1,300,[3] and against Manufacturer's Casualty Insurance Company, as surety on Wilhelm's bond, in the sum of $2,000, when paid, to apply on the judgment against Wilhelm. From such decree, appellants bring this appeal. Appellee cross-appeals, such appeal being based upon the action of the court in denying recovery for sums she contended were due her from Wilhelm, arising from the purchase of property from one J. E. Pitts, and the purchase from one C. B. Stofregen of property located at 42 Prospect, where she now lives. Mrs. McLaughlin contends that she is due $1,175 on the Pitts transaction, and $1,000 on the Prospect Street transaction.

The litigation is purely a fact question, it being admitted by appellants that an agent occupies a fiduciary relationship to his principal, and as such fiduciary, cannot make a profit for himself while serving his principal in a particular transaction without the consent of the principal, and then only after a full and complete disclosure of all material facts. Appellants simply contend that the proof in this case was not sufficient to establish that they were acting under a fiduciary relationship. We see no need to detail the testimony, which was quite lengthy, and which would serve no good purpose since, as previously stated, the law gov-

[2] The cross complaint was later dismissed by Carter, stating that "* * * his said co-defendant has in all things met and satisfied the demands of this defendant as set out in the cross complaint."

[3] Mrs. Luptak was given credit for a $200 broker's fee she had paid.

erning such transactions is not in dispute, and the litigation was determined purely upon the trial court's view as to the preponderance of the evidence.

We will first consider the transaction between Mrs. McLaughlin and Mrs. Luptak. Mrs. McLaughlin, in brief, testified as follows: She is 62 years of age . . . a registered nurse . . . her cousin, Mrs. Luptak, called her around the last of April, 1955, advising there was a good piece of property in Eureka Springs that could be bought . . . stated she would buy it herself, but could not afford to, but would make the down-payment for appellee, and witness could pay her back . . . "I said, 'Well, very well, go ahead'." . . . Mrs. Luptak first stated the property was selling for $4,250, but, while apparently talking to somebody at her end of the line, said she had made a mistake and it was $5,500. Mrs. McLaughlin was reaching retirement age, and had previously told Mrs. Luptak to look around for a place where she could live . . . She came to Eureka Springs on May 6th or 7th, 1955, with Mrs. Luptak and her husband, by automobile, shortly returned to Chicago to get money, and within a few days, returned to Eureka Springs. She saw Mrs. Baker on May 24th for the first time . . . went with Mrs. Luptak and Wilhelm to the home of Mrs. Baker . . . **tried** to talk to Mrs. Baker, but her cousin and Mr. Wilhelm would change the subject or have something else they wanted to show her. She gave her check in the amount of $5,500 to Mrs. Luptak on that date, and later learned that her cousin had only paid Mrs. Baker $4,000 for the property.

Mrs. Luptak testified that she was searching for a piece of property for her brother . . . W i l h e l m mentioned the Baker property to her and she went out and looked at it . . . she told Mrs. Baker she was buying it for her brother . . . **her brother was unable** to buy it, and so she bought it herself as an investment. . . . she went to Chicago the next day and went out to visit Mrs. McLaughlin, telling her about the property . . . denied that she had called Mrs. Mc-

Laughlin over long distance in April . . . appellee wanted to go back to Eureka Springs with her and take a look at the country . . . they went to see the Baker property, accompanied by Wilhelm, and later Mrs. McLaughlin wanted to purchase it . . . Wilhelm insisted she let Mrs. McLaughlin have the property, and she agreed, selling it to her for $5,500. Mrs. Luptak insists that she had no thought or intention of buying the property for appellee at the time she (Luptak) entered into the purchase agreement with Mrs. Baker in April; that Mrs. McLaughlin inspected the property on three different occasions between May 9th and May 24th and only decided to purchase same on the latter date, giving her a check for $5,500 at that time. This testimony was disputed by Mrs. Baker (now Doherty) who testified that Mrs. Luptak told her she was buying the property for her cousin. She stated that the transaction was completed before she ever met Mrs. McLaughlin, and further verified appellee's testimony to the effect that appellants prevented her from having any conversation with appellee.

The most potent evidence in behalf of appellee, however, is the deed itself. This deed is from Hazel D. Baker to Margaret McLaughlin and Brian A. McLaughlin,[4] dated May 9, 1955, and recorded on May 18, 1955. Mrs. Luptak's explanation is that the deed was originally made to her on May 9th, but that on reconveying it to Mrs. McLaughlin, the name was rubbed out, and Mrs. McLaughlin's inserted in order to save recording fees on two deeds. She makes no explanation for the fact that the deed, as recorded on May 18th, showed the McLaughlins to be the grantees. There are obvious erasures where the name of the grantee is inserted, but Mr. Jay Russell, an attorney of Eureka Springs, gave a much more reasonable explanation. Mrs. Baker had come to his office on another matter, and while she was there, he also prepared this particular deed. From his testimony:

[4] Son of appellee.

"* * * I had understood that the deed was to be made to Jeanne Luptak, and I drew the deed to Jeanne Luptak and handed it over for examination. And Wilhelm said, 'No, I want it made to Margaret McLaughlin and Brian A. McLaughlin.' I then rubbed out Margaret McLaughlin and ——

Q. You mean Jeanne Luptak's name.

A. Jeanne Luptak's name, and put in Margaret McLaughlin and Brian A. McLaughlin, and had Mrs. Baker sign it. I did that on the 9th of May * * *."

As stated by the Chancellor:

"* * * Now the Court is unable to * * * see how Mr. Wilhelm or anybody else would have the prescience to know, on May 9th, only one day after Mrs. McLaughlin got here, that on May 24 she would decide to buy the property and pay for it, and would know to instruct the scrivener to take the Luptak name out and put the McLaughlin name in' * * *." We fully agree. These facts are irreconcilable with Mrs. Luptak's contention that Mrs. McLaughlin was not interested in the property until after arriving in Eureka Springs sometime around May 8th or 9th, and that appellee did not decide to purchase it until May 24th.

We come now to a discussion of the purchase of the Vaughn Street or Jeske property. Mrs. McLaughlin testified that she returned to Chicago and sold her home, as she planned to go back to Eureka Springs and stay, and wanted a place there to live.[5] She accordingly wrote a letter to Wilhelm asking him to find a place for her to purchase as a home. According to her testimony, Wilhelm called her on July 31st and told her there was a place to be sold at auction, and he thought it would be a good place to live. At the time, Wilhelm was holding approximately $8,000[6] belonging to appellee, by virtue of sales of property he had made as her agent. Appellee testified that she asked if she had enough money to

---

[5] The Baker property was disposed of by Mrs. McLaughlin about two months after the purchase.

[6] The exact amount is in dispute, the testimony ranging from $7,800 to $8,600.

buy it, and he replied: "Well, if it costs more than I've got, I won't buy it." He called her back on August 2nd and reported that he had purchased the place. The record reflects that the property was purchased on August 2nd and deed executed to Wilhelm. Mrs. McLaughlin returned to Eureka Springs on August 14th, and it was not until a few months later that she learned she had been charged $7,000 for the property, while Wilhelm had only paid $3,300 for it.

Wilhelm testified that he and Carter saw the property advertised for sale, took a look at it, and he bid it in for $3,300, with the deed being made to him, though he and Carter were partners in the transaction. He denied any prior conversation with Mrs. McLaughlin . . . stated she had never contacted him about the Vaughn Street property . . . that he had no conversation with her about this property until after she arrived in Eureka Springs. He stated that she wanted to purchase it, and he sold it to her for $7,000 on August 8th . . . that the amount was taken from the money heretofore referred to which he was holding, and which belonged to her. According to Wilhelm, Mrs. McLaughlin signed an "Offer and Acceptance" agreement to purchase the property from him for $7,000, the transaction taking place at the home of Mrs. Luptak on August 8th, and he offered in evidence a copy of such agreement, supposedly signed by appellee. This testimony was corroborated by Mrs. Luptak. Mrs. McLaughlin denied signing such agreement, stated that the signature was a forgery, and testified that she was in Chicago serving on the Cook County Petit Jury on August 8th. She offered in evidence a photostatic certified copy of an "Attendance Master Jury Card." Apparently, under the procedure in Cook County, the juror is required to sign this card each day he or she is present for jury service, and the card shows Mrs. McLaughlin's signature for each day from August 1st through August 12th. The court rejected this evidence, apparently because it was not properly authenticated. Be that as it may, we think there is sufficient evidence to sustain the chancellor's finding that Wilhelm was acting for Mrs. McLaugh-

lin in purchasing the property. As stated by the trial court:

"The evidence is replete that Wilhelm was acting as something more than a mere real estate broker, as to plaintiff; that he actually did have her money, and was actively engaging himself as her agent  *   *   *."

We are of the opinion, however, that the court erred in one respect. Other lots, which had not been purchased by Wilhelm at the sale, and which were not included in the $3,300 sale price, were conveyed to Mrs. McLaughlin, along with the Vaughn Street property, for the $7,000. The testimony reflects that $1,000 was paid to Carter by Wilhelm for these lots, though the fact that this amount was paid, does not necessarily establish the lots to be of that value. We hold that Wilhelm is entitled to a credit on the $3,700 judgment in the amount of the actual value of these lots at the time they were conveyed to Mrs. Mc-Laughlin.

Turning to the cross appeal, we quote from the trial court's opinion:

"As to the other properties, the Court finds that Mrs. McLaughlin has failed to meet the burden of proof imposed upon her; in respect of the Pitts property or the Prospect Street property or the Bohlman property, that in no material degree has the plaintiff shown by a preponderance of the evidence that she was misled or had her eyes closed to anything. And even though it might appear that the price received by the seller of the properties was less than that paid by Mrs. McLaughlin, there is nothing in the testimony to indicate that the difference was other than the normal and legal and proper difference. In any event, there is nothing about those transactions to show that Mrs. McLaughlin was misled or deceived or cozened."

We are unable to say that the court erred in so finding.

As stated in *Kelker* v. *Payton*, 227 Ark. 369, 298 S. W. 2d 704:

"This case is almost entirely a question of fact, and if the lower court construed the facts correctly, there could be no contention that the law was erroneously applied. The Chancellor heard the case, had the opportunity to observe the demeanor of the witnesses, and evidently paid close attention to the evidence.  *  *  * The rule, so many times reiterated, is to the effect that while this Court tries Chancery cases *de novo*, still it will not reverse a Chancellor's decree unless his findings are against the weight of the evidence."

The court further found that the evidence did not reflect with certainty that a balance was owed by Wilhelm to Mrs. McLaughlin, or by Mrs. McLaughlin to Wilhelm,[7] with which conclusion we concur.

Accordingly, the decree should be modified to the extent of giving Wilhelm credit for the value of the lots deeded with the Vaughn street property to Mrs. McLaughlin, and the case is remanded with directions to determine the value of said lots at the time of the conveyance on August 8, 1955, and to enter a decree consistent with this opinion.

---

[7] Upon this finding, the court dismissed a cross complaint (counterclaim) filed by Wilhelm, but which does not appear in the transcript. The counterclaim related to various expenditures which Wilhelm contended he had personally made on Mrs. McLaughlin's properties. The court's action in dismissing the counterclaim is not assigned as error, nor argued by appellant in his brief.