Manufacturers Casualty Insurance Co. *v.* Wilhelm.

5-1886                                               328 S. W. 2d 270

Opinion delivered October 26, 1959.

*O. E. Williams* and *Wright, Harrison, Lindsey & Upton,* for appellant.

No brief filed for appellee.

Paul Ward, Associate Justice. This litigation presents a legal question of first impression in this State relative to rights of subrogation. The pertinent facts are not in dispute.

On June 25, 1957, Mrs. Margaret McLaughlin secured a judgment in the Carroll Chancery Court against Milton Wilhelm in the amount of $3,700.00; against Jeanne Luptak in the amount of $1,300.00, and,

against the Manufacturers Casualty Insurance Company (hereafter called Company) in the amount of $2,000.00.

A brief explanation of the reasons for the above judgments is necessary. Wilhelm, who was a real estate broker, and Luptak, who owned a motel, were supposed to have mishandled a business transaction for McLaughlin, the Company having undertaken to see that any judgment against Wilhelm (up to $2,000.00) would be paid. Hence, the June 25th decree provided that when the $2,000.00 was paid it would apply on the $3,700 judgment against Wilhelm. In other words, McLaughlin was entitled to collect only $5,000.00 ($3,700.00 and $1,300.00).

Within apt time Wilhelm and Luptak prosecuted an appeal to this court (See *Wilhelm* v. *McLaughlin,* 229 Ark. 118, 313 S. W. 2d 821), where the judgments against them were affirmed. Before the appeal was perfected Wilhelm and Luptak executed a supersedeas bond with Sheehan and Tyrrell as sureties. However, the Company did not appeal from the $2,000.00 judgment against it, and, after the time for appeal had lapsed, McLaughlin had an execution issued and the Company paid over to her $2,000.00. This payment by the Company was made after its attorneys had written Wilhelm's attorneys that it would expect reimbursement from Wilhelm.

On July 21, 1958, after this court's affirmance above mentioned, the Company filed, in the original case, a Motion for Summary Judgment against Wilhelm and all the sureties (on the said supersedeas bond) for the sum of $2,000.00. Attached to the motion, as exhibits, were copies of the decree in the original case, of the said supersedeas bond, McLaughlin's assignment to the Company, and Wilhelm's agreement (in his application for a bond) to hold the Company harmless for any loss. The Motion also set out many of the pertinent facts heretofore stated.

The trial court sustained the Company's motion for judgment against Wilhelm for $2,000.00 but denied the

motion as to the sureties on the supersedeas bond executed for Wilhelm. The Company now presents this appeal from that portion of the decree denying judgment against the sureties.

In the absence of any brief on behalf of the appellees we have made our own research of the authorities but are unable to find any definite pronouncement which sustains the trial court's action. On the other hand all the legal and equitable principles of which we are cognizant indicate the contrary.

The supersedeas bond signed by appellees bound them to ''satisfy and perform the judgment . . . appealed from in case it should be affirmed''. The judgment against Wilhelm was, of course, affirmed as heretofore noted. Ark. Stats. § 27-2146, dealing with appeals to the Supreme Court, provides that upon the affirmance of a judgment which has been superseded — ''Judgment shall be rendered and entered up against the securities on the supersedeas bond, and the Court shall award execution thereon''. It is obvious then that McLaughlin had the right to collect the $2,000.00 in question from the sureties had appellant not paid her that amount. But when she did receive $2,000.00 from appellant she assigned her right to collect to appellant. This assignment reads as follows: ''In consideration of payment of the $2,000.00 judgment against the Manufacturers Casualty Insurance Company, which was paid to me after execution was issued in the case of *Margaret O. McLaughlin* v. *Milton Wilhelm, et al*, in the Carroll Chancery Court, Western District, I hereby transfer, assign and set over unto the Manufacturers Casualty Insurance Company, the surety on Wilhelm's real estate broker's bond, all the right, title, interest and equity that I may have had in said judgment on October 3, 1957, or at any other time''.

It seems logical to us then, since appellant was not primarily liable and since appellees voluntarily assumed payment of the $2,000.00 to McLaughlin, that appellees are legally bound to pay the $2,000.00 to ap-

pellant. In other words, we fail to see how appellees have been placed in a worse condition merely because one payee has been substituted for another. This same view was expressed in *Howell* v. *Alma Milling Co.*, 36 Neb. 80, 54 N. W. 126, where surety liability to a substituted party was under consideration in a situation similar to the one here, and where the court said: "The surety took this risk of substitution. He was not in the least prejudiced by the change of plaintiffs. The cause of action remained the same. He was not placed in a worse situation, for had there been no substitution Howell could have prosecuted the suit to judgment in the name of the original plaintiff". A similar statement is found in 3 Am. Jur., Appeal and Error, § 1296: "Where the substitution of a person who has succeeded to the rights of a party to an action is authorized, a surety on an appeal bond is not discharged by the fact that a person to whom the appellee's interest in the subject matter of the action has passed, while the appeal is pending, is substituted for the appellee without the consent of the surety, as the law permitting the substitution of parties must have been known to the surety when he became surety and he must be held to have signed the bond subject to such contingency; and so, if there had been no substitution, the person succeeding to the rights of the appellee could have prosecuted the action in the name of the appellee, and as the cause of action remained the same, the surety is in no way prejudiced by the substitution."

In addition to the above there appears to be respectable authority, in cases of this nature, to the effect that a later surety (in point of time) will be liable to an earlier surety, based on equitable principles. Although not in point on facts, the early case of *Chrisman* v. *Jones, et al*, 34 Ark. 73, apparently bears out the significance of the time factor. At Page 77 we find this statement: "The principle in equity seems to be well established, that when successive securities for debt have been given in judicial proceedings upon the request of the debtor alone, to enable him to prolong the litiga-

tion, whilst all will be liable directly to the creditor, they will be, as amongst themselves, liable to exoneration in the inverse order of their undertakings. That is to say, those who contract last become sureties, not only for the benefit of the creditor, but in the exoneration of those who precede, and all will be liable to exonerate the original sureties for the debt, if any there be". The *Chrisman* case (along with other cases) is cited in support of the above announced rule in L.R.A. 1918 D at Page 1191, where it is stated: ". . . In cases where the appeal is not taken with the consent of the prior surety, the first surety, upon payment of the obligation of his bond, is entitled to be subrogated to the rights of the creditor as against the sureties on the supersedeas bond". The rule relevant to the sequence of liability among sureties, often referred to as the *rule of inverse order,* is recognized to depend to some degree on the equities involved. The equitable element is recognized in connection with the inverse order rule in 117 A. L. R. at Page 584. It is there said: "The rule of inverse order, considered *infra,* III., has been sometimes laid down, to the effect that the sureties will be exonerated in the inverse order of their undertakings. However, it will be noted that this is not an absolute rule, distinct from the equitable rule, and that the cases in which the rule as to inverse order has been applied have usually been those in which there was some equity in favor of the earlier surety".

A consideration of the present case under the modified rule still, we think, calls for a reversal. Although the equities on the side of appellant and the sureties are not easy to assess, we believe, as before indicated, that they favor appellant. In assessing the equities in favor of the sureties we should not be swayed too much by the fact that they must pay a debt which they did not create and from which they derived no tangible benefit, because it is after all an obligation which they voluntarily assumed with full knowledge of all inherent consequences. Equity must not be confused with hard-

ship. It is always a hardship for one person to have to pay the debt of another, but it is no excuse for refusal to pay. On the other hand, under appellant's policy of indemnity, its obligation to pay could arise only in case McLaughlin could not obtain payment from Wilhelm who was the prime obligor. The sureties, in an effort to help free their friend (Wilhelm) from all liability (by appealing) chose to assume Wilhelm's debt, and we fail to see in what way it is inequitable for appellant to reap the benefit. After all, appellant seeks not to gain but only to avert a loss.

It follows from the above that the decree of the trial court must be, and it is hereby, reversed.

Reversed.

McFADDIN and JOHNSON, JJ., dissent.

ED. F. McFADDIN, Associate Justice, dissenting. The majority is holding that the Manufacturers Casualty Insurance Company was subrogated, to the extent of $2,-000.00 to the position of Mrs. McLaughlin against Sheehan, Tyrrell, and Hoover, who were sureties on Wilhelm's supersedeas bond in his first case in this Court. My study convinces me: (a) that the insurance company can now assert by subrogation only the rights that Mrs. McLaughlin could have asserted against the sureties on Wilhelm's supersedeas bond; (b) that Mrs. McLaughlin lost the right to assert the $2,000.00 claim here involved, against the sureties, Sheehan, Tyrrell, and Hoover, on the supersedeas bond because Mrs. McLaughlin did not rely on that bond: instead she pursued the insurance company by execution; and (c) that when the insurance company paid the $2,-000.00, it merely satisfied a judgment against the insurance company, and is not entitled to any subrogation.

The present case is a sequel to that of *Wilhelm v. McLaughlin,* decided by this Court on June 2, 1958, 229 Ark. 118, 313 S. W. 2d 821, and referred to as the "first case", to distinguish it from this one, referred to as the "present case". Wilhelm was a real estate broker, duly licensed by the State, and, as a prerequisite for such license,

Wilhelm was required to, and actually did, file with the State a fidelity bond in the sum of $2,000.00, with Manufacturers Casualty Insurance Company as surety thereon. The bond was conditioned as required by law. (See § 71-1301 *et seq.* Ark. Stats.)

In the first case, Mrs. McLaughlin established that Wilhelm had defrauded her. She sued, not only Wilhelm, but also Manufacturers Casualty Insurance Company (hereinafter called "Manufacturers"), as surety on his said real estate broker's bond. Mrs. McLaughlin recovered judgment against Wilhelm for $3,700.00, and against Manufacturers for $2,000.00 on its bond, and the judgment provided that the $2,000.00, when paid, would apply on the $3,700.00 judgment against Wilhelm.[1] *Manufacturers did not appeal from the judgment against it in the first case.* Wilhelm appealed to this Court in the first case and posted a supersedeas bond with Sheehan, Tyrrell, and Hoover as the sureties thereon. The judgment against Wilhelm in the first case was dated June 25, 1957, and the supersedeas bond was dated July 23, 1957. When Manufacturers did not appeal the judgment against it, Mrs. McLaughlin threatened execution against Manufacturers and took the matter up with the State Insurance Department to recover on the bond. Manufacturers finally paid Mrs. McLaughlin the $2,000.00, which was the judgment against Manufacturers, and took from Mrs. McLaughlin, under date of October 3, 1957, a so-called "Assignment".[2]

When we affirmed the chancery decree in the first case, Manufacturers then initiated the present case by filing in the Chancery Court on July 21, 1958 its "motion for Summary Judgment" against Myrtle A. Sheehan, E.

---

[1] Mrs. Luptak was a defendant in the first case. Mrs. McLaughlin obtained a separate judgment against Mrs. Luptak for $1,300.00, but that is not involved in the present case in any way.

[2] This instrument, which is the basis of the claim of subrogation herein, reads as follows: "In consideration of payment of the $2,000.00 judgment against the Manufacturers Casualty Insurance Company, which was paid to me after execution was issued in the case of *Margaret O. McLaughlin* v. *Milton Wilhelm et al*, in the Carroll Chancery Court, Western District, I hereby transfer, assign and set over unto the Manufacturers Casualty Insurance Company, the surety on Wilhelm's real estate brokers bond, all the right, title, interest and equity that I may have had in said judgment on October 3, 1957, or at any other time."

F. Tyrrell, and Warren P. Hoover, for the said $2000.00 that Manufacturers had paid Mrs. McLaughlin to satisfy the judgment rendered against Manufacturers by the Chancery Court in the first case. The Chancery Court refused Manufacturers' plea for summary judgment against Sheehan, Tyrrell, and Hoover (but gave summary judgment against Wilhelm), and Manufacturers has now appealed. The majority of this Court is now allowing Manufacturers a judgment against Sheehan, Tyrrell, and Hoover on the theory of subrogation; and I dissent from the majority opinion. Here are my reasons:

(1) Manufacturers was a party to the first case and suffered a judgment to go against it for $2,000.00 and failed to appeal or supersede the judgment; rather, Manufacturers paid the judgment against it and should not now reap a windfall profit against the sureties on Wilhelm's bond.

(2) Mrs. McLaughlin did not rely on the supersedeas bond signed by these sureties, Sheehan, Tyrrell, and Hoover: rather, she pursued Manufacturers with a threat of execution. When Mrs. McLaughlin did not rely on the supersedeas bond, she thereby discharged the sureties; and Manufacturers cannot stand in any position better than Mrs. McLaughlin could occupy. The text in 3 Am. Jur. 773 states the rule:

"Where the appellee declines to accept the potection of an appeal or supersedeas bond, the surety has been held discharged in some, though not all, of the cases."

Likewise, in C.J.S. Volume 5B, page 720, the text gives the rule:

"A surety on a supersedeas bond may set up the defense that plaintiff has declined to accept the full protection of the bond and has acted inconsistently therewith concerning the subject matter of the judgment."

In 53 A.L.R. 807, there is an annotation entitled: "Failure of obligee in supersedeas bond to accept protection thereof or his act inconsistent therewith as affecting liability on bond."

It is true that the sureties, Sheehan, Tyrrell, and Hoover have filed no brief in this Court; but, from the study I have made, I have reached the conclusion that we should not allow subrogation in this case in the face of the authorities that I have mentioned none of which is cited or discussed in the majority opinion. When Mrs. McLaughlin pursued Manufacturers, she waived her right to also claim under the supersedeas bond; and she could not convey to Manufacturers a right that she had already waived. I submit that the Chancery Court was eminently correct in refusing Manufacturers its summary judgment against the sureties; and for these reasons I respectfully dissent, with Justice JOHNSON joining in this dissent.